No. 13,500.

Annie T. Frith, Tutrix, vs. W. O. Pearce, Tutor, et als.

## Syllabus.

In case a nuncupative testament by public act is held good as a nuncupative testament under private signature in other respects, the notary signing the act, and the person who signs the name of the testatrix on account of her physical disability, are competent witnesses, and may be counted as such.

It appearing from the recitals of such an instrument, that the testatrix "was not able to sign her name on account of physical disability," the requirements of R. C. C. 1582 will be complied with.

ON REHEARING.

If a plaintiff, desiring to take an appeal from the judgment rendered on his peti
tion, obtains an order for a "general appeal," and perfects the same by exe-
cuting a bond in favor of the clerk of court, the appeal brings up the entire
judgment.

The appellant cannot limit the scope of the appeal by a mere recital in the "con-
dition" of the bond, that it is taken from particular parts of the judgment.
If such was appellant's intention he should have made the same known in
the application for appeal and caused the order of appeal to be made accord-
ingly.

APPEAL from the Tenth Judicial District, Parish of Avoyelles
—*Couvillon, J. ad hoc.*

*Joseph Clifton Cappel,* for Plaintiff, Appellant.

*William Harris Peterman,* for Defendants, Appellees.

The opinion of the court was delivered by WATKINS, J.

On rehearing by NICHOLLS, C. J.

WATKINS, J. This is an action to have the nullity of a testament
decreed, and, in the alternative that the validity of the same is main-
tained, that the legacies therein stipulated be declared void and of no
effect, and not enforceable in law.

The testament is of the following tenor, viz:

"STATE OF LOUISIANA,

"PARISH OF AVOYELLES.

"Be it known that I, William M. Ewell, notary public in and for the
"State and Parish aforesaid, on the 10th day of November, A. D. 1892,
"repaired to the house of Mrs. Sarah A. Frith, inhabitant of the said
"Parish of Avoyelles and State of Louisiana, where, at her request and
"dictation, the following instrument was written by me, the said no-
"tary, and declared by the said Mrs. Sarah A. Frith to be her last will
"and testament, which was written by me, said notary, as dictated by
"said Mrs. Frith, without turning aside to anything else, in presence
"of the undersigned witnesses.

"1st. I want May Pearce to have one hundred acres of my cleared
"land on the Talbot place.

"2nd. I want Minnie and Sadie Frith to have fifty acres of land
"each on the Talbot place, cleared land.

"3rd. I want my sister, Mrs. Verlinda Marshall, to have twenty-
"five acres of open land on the Talbot place.

"In testimony whereof, the said Mrs. Sarah A. Frith, not being able
"to sign her name, on account of physical disability, her son, Thomas
"P. Frith, signs for her, in presence of Aubrey Lee Johnson, John A.
"Hollinshead and Wyatt K. Pearce, lawful witnesses residing in this
"parish, and me, the said notary, after reading the same in an audible
"voice, in the presence of the testatrix and said witnesses without in-
"terruption and without turning aside to other acts, this 10th day of
"November, A. D. 1892.

"SARAH A. FRITH,

"Per Son, T. P. FRITH.

"Witnesses:

"A. L. JOHNSON,

"J. A. HOLLINSHEAD,

"W. K. PEARCE.

"Done and passed on the day and date aforesaid, and in the parish
"aforesaid.

"WILLIAM M. EWELL,

"Notary Public."

This document was admitted to probate as a nuncupative testament
under private signature, and, as such, its validity was maintained by
the judge a quo.

He decreed that the bequest made in favor of Mrs. Verlinda Mar-
shall be recognized and enforced, but that those bequests that were
made in favor of May Pearce and Minnie and Sadie Frith be severally
decreed null and of no effect in law and that said legatees are prohibited
from inheriting said bequests by reason of their renunciation and
abandonment thereof and their acceptance of their respective shares
in the succession of the testatrix as heirs at law.

From that judgment, the plaintiff, alone, has appealed, the cast de-
fendants, as legatees, having contented themselves with making an-
swer to the plaintiff's appeal and requesting an amendment of the de-
cree annulling the bequests in their favor.

The grounds upon which the plaintiff contests the validity of the
testament are the following, viz:

1st. That the said testatrix did not sign or affix her signature to
said will, and the signing by her son, T. P. Frith, Jr., renders said
will invalid.

2nd. That it does not appear from said will that there were any declaration, on the part of said testatrix of her inability to sign, or the reason why, except the written statement of the notary himself purporting to give his own opinion, and not the declaration of the testatrix as dictated by her to him.

3rd. That the bequests to Minnie and Sadie Frith, who inherited by representation through their deceased father, Chas. E. Frith, and May Pearce, inheriting by representation through her deceased mother, Menerva Pearce, all of whom were forced heirs of said testatrix and named legatees in items first and second of said will, are null and void, for the reason that said will does not disclose that the said testatrix intended said legacies bequeathed to said heirs to be over and above their *legitime,* or over and above the *legitime* portion of other forced heirs.

4th. As a nuncupative will under private act that the requisite number of witnesses did not attest said will.

5th. It does not appear that said will was ever read by said testatrix to the witnesses, or by one of the witnesses to the rest in presence of said testatrix.

6th. And as the last ground, that the legatees, Minnie and Sadie Frith and May Pearce, having effected a partition of the entire succession, in utter disregard of the will, are now estopped from claiming any benefit under such invalid will.

As the discussion in the briefs, and oral argument as well, are chiefly addressed to the question of the validity of the will as a testament under private signature, we will observe the same course in its examination.

Counsel for appellant insists, that the judge *a quo* in sustaining the will as a nuncupative testament under private signature, improperly sustained the defendant's contention to the effect that both the notary and T. P. Frith were competent witnesses, same being necessary to make out the requisite number of five witnesses.

His statement is that "whilst the Supreme Court, in a few instances, have, in order to hold a will good under private act, declared the notary a competent witness thereto, this ruling can not be so extended as to permit such a flagrant violation of the articles of the Civil Code on this question."

"The notary is a witness to the act as much as the other attesting witnesses; he attests the signaure of both the testator and the witnesses. In other words, he is an official witness in every act pertaining to the execution of the will."

This argument goes very far towards admitting that the notary who attests an instrument as a nuncupative testament by public act, may be treated as a simple witness to a testament under private signature, when same is so considered. "But," he says, "this reason would not apply to the signature of one *who simply writes the name of the testatrix.* His affixing his signature is not conclusive proof that the will was either read by him, or in his presence. \* \* \*

"\* \* \* This will purports to be signed by an agent or attorney in fact; such agent can no more be called a witness than could the testator himself. He does not appear as attesting any part of the will; he simply affixes the signature of the testatrix and witnesses. The act simply purports to be the act of the testatrix, and greater significance cannot be given such signature than the original signature of the testatrix. The article 1881 of the Revised Civil Code plainly points out the manner of affixing the signatures of those who are unable, or know not how to sign. It is by affixing their marks by the notary, or one of the attesting witnesses residing in the place."

The contention, on the other hand, is that the signatures as appended to the testament, thus "Sarah A. Frith, per Son, T. P. Frith," subserves all the requirements of the law touching the signature of a person who is incapable of signing as testator, as well as that of a competent witness thereto.

The name of the testatrix was written by her son, and he signed his own name for the express purpose of attesting her signature.

Defendant's counsel submits that "five names do actually appear signed  to the instrument *as persons present when it was executed,* although it may appear that the entire five did not intend to officiate as witnesses, nevertheless, in order to maintain the validity of the will, they will be regarded as having acted in that capacity.

\*          \*          \*          \*          \*

"Independent of any authority on the point, no good reason can be assigned against counting all of these five names as (the names) of witnesses.    The law simply says that the testament must be executed in presence of five witnesses. Certainly, it is proven, both from the face of the will itself, and by the testimony *aliunde,* that those five persons were *actual witnesses.* They were all (present) during the whole making of the testament, and *signed* as being *present* at its execution."

The following extracts from the testimony of the witnesses who were heard at the trial, support that proposition.

That of Dr. Hollinshead, one of the witnesses who attested the will, being that:

. "The notary, according to my recollection, was writing what she dictated, and the witnesses were all there, both as the dictation was made and the writing was done. Immediately after the writing was concluded, the notary read over what he had written to Mrs. Frith in the presence of us all, and asked her if that was what she wanted, and she assented. The signatures were then immediately affixed. The foregoing matters were all gone through without any interruption of any kind. We were all standing around Mrs. Frith's bed when she began to dictate to the notary, and we remained there until the dictation, writing and reading and signing were completed, in the manner I have stated above. All the formalities stated in the will were complied with as they are written in the will."

That of Rev. A. L. Johnson is of similar import.

Another witness was Frith Pearce, a grandchild and heir of the testatrix. He was present when her will was executed, and stated that "he heard her dictate, saw the notary write it, and heard him read it over to her after it was written. The dictation, writing and reading were all done in he presence of the witnesses to the will."

"My grandmother," testified this witness, "first dictated her will to the notary in the presence of the witnesses, who were all standing around her bed. He wrote it down as she dictated it, and then read over to her what he had written. He asked her if that was what she wished, and she assented. The will was then signed by the notary and by the witnesses, and by T. P. Frith for the testatrix. All these things were done without turning aside to anything else, the witnesses remaining about the bed from the time the formalities were commenced until they were concluded. I remember the incident of my grandmother asking for the notary. When it was known that she desired to have a notary in order that he might write her will, Mr. T. P. Frith was standing at her bedside. He said: 'Ma, it is unnecessary for you to make a will; any desire of yours will be fulfilled by me just as if you were living.' The other heirs of Mrs. Frith were present and heard this. There was a general assent among those in the room to this. I am twenty-four years of age. I am not a legatee under this will. All the heirs of Mrs. Frith were present in the room when the will was dictated, and executed. Henry Frith and I were the persons who went for the notary that night."

The other witness heard for the probation of the will was Mrs. John

Snelling. This lady, before her marriage, was Miss Bessie Murph, the testatrix's granddaughter.

She testified that she was present when her grandmother's will was executed, and swore as follows:

"I am not named as legatee in the will. I heard my grandmother dictate the bequests made in the will at the time the will was executed. After she had been told what her will was, she called me and told me that I must not feel that because she had left me out of her will, was because she didn't care as much for me as the others; it wasn't that at all, but that she had thought about it and thought I would have as much land as the other three girls without the extra amount. She meant this: I was the only heir of my mother, and in the case of the others, there were three of Ed. Frith's children and three of the Pearces. I would get the share of one of her children, while the others would be divided into thirds. That is the reason why that the others were mentioned in the will and I was not."

Dr. Hollinshead further testified as follows: "I saw Thomas P. Frith sign his mother's name and his own to the will. Frith signed his mother's name to the will, then we signed as witnesses, and then the notary signed, according to my recollection. At the time this will was signed Mrs. Frith's condition was very low; she could not possibly have signed the will."

In addition to the statements made by witnesses, the recital of the testament is that at the request and dictation of the testatrix, "the following instrument was written by me, the said notary, and declared by the said Mrs. Sarah Frith to be her last will and testament, which was written by me, said notary, as dictated by said Mrs. Frith."

In Wood vs. Roane, 35th Ann, 865, it was held that in the execution of nuncupative wills under private signature, the law authorizes the testator to cause his will to be written out of his presence and that of the instrumentary witnesses; that the person who has acted as the amanuensis of the testator for that purpose, is not disqualified on that account from officiating as one of the witnesses to the will, and can be counted as one of the five witnesses as required by law.

That proposition strikes us as perfectly sound, and it is applicable to both William M. Ewell, who signed the instrument as a notary, and T. P. Frith, who signed it as acting for the testatrix. Both were competent to sign as witnesses, and both did sign the act. The five persons who signed the act were all present when the will was dictated

by the testatrix, and written by W. M. Ewell, as dictated, "after read-ing the same in audible voice in the presence of the testatrix and the said witnesses."

Considering W. M. Ewell, as one of the witnesses, it was competent for him to write the will, and afterwards read it to the rest in the pres-ence of the testatrix.

We are of the opinion that there were five witnesses who signed the testament, and that, in that respect, same is valid.

Counsel for appellant contends that the will is void, because it con-tains no express mention made by the testatrix, herself, of her inability to sign same, or the reason of her inability so to do; and that the mere declaration of the person who wrote same that the testatrix "was not able to sign her name, on account of physical disability," was not a ful-filment of the requirement of the law.

The only formality that the law prescribes for the confection of a nun-cupative testament under private signature is that it be written by the testator himself, or by any person from his dictation; or even by one of the witnesses, in presence of five witnesses. "Or it will suffice if, in the presence of the same number of witnesses, the testator presents the paper on which he has written his testament, or caused it to be written, declaring to them that that paper contains his last will." R. C. C. 1581.

"In either case, the testament must be *read* by the testator to the witnesses, or by one of the witnesses to the rest, in presence of the tes-tator; it must be signed by the testator, *if he knows how, or is able to sign*" &c.    R. C. C. 1582.

The law declares that "this testament is subject to no other formal-ity than those prescribed by this and the preceding article." *Id.*

Much stress has been laid in argument, on the provisions of R. R. C. 1579, but they apply to testaments received by public acts, and those only.

It is undoubtedly true that the will under consideration was drawn by a notary, who intended it for a nuncupative testament by public act, but as the law declares that "it suffices, for the validity of a testa-ment, that it be valid under any of the forms prescribed by law, how-ever defective it may be in the form under which the testator may have intended to make it."   (R. C. C. 1590), we are at liberty to disregard the phraseology of the instrument incident to a notarial act, and deal with its substantial elements; and having done so, we find in the will

the substantial statement, that the testatrix was unable to sign her name "on account of physical disability."

We are of opinion that that recital subserves all the requirements of the law.

We have been referred to no authority on this question, by counsel on either side, and those cited with reference to testaments received by public acts are not applicable, on account of the marked difference between the two articles of the code that appertain to nun-cupative testaments.

Our examination has led us to the conclusion that the will is legal and valid.

With regard to the nullity of the legacies in favor of May Pearce and Minnie and Sadie Frith because of their having, participated in the partition of some of the succession property of the testatrix, but little is said in the briefs of either party.

The record discloses the fact that such a partition was made, but it also shows that all of said legatees were minors at the time, and represented in the proceedings by special tutors appointed to represent them therein.

The defendants' counsel insists that the defendants can not be judicially estopped by such proceedings; and in that proposition we quite agree.

Zunts vs. Courcelle, 16th Ann. 98.

7 Am. and Eng. Enc. of Law, p. 4, and authorities cited.

This conclusion necessariliy results in the amendment of the judgment appealed from, so far as to reinstate the aforesaid legatees and to affirm it in all other respects.

It is, therefore, ordered and decreed, that the judgment appealed from be so amended as to reinstate and maintain the legacies in favor of May Pearce and Minnie and Sadie Frith, and that the same be, in all other respects, affirmed; and that all costs be taxed against the plaintiff and appellant.

## ON REHEARING.

NICHOLLS, C. J.  A rehearing was granted in this case, touching that portion of the judgment of this court herein before rendered, amending the judgment of the District Court, in respect to the legacies made in the will of Mrs. Sarah A. Frith, in favor of May Pearce, and Minnie and Sadie Frith, by which amendment the legacies in favor of those persons were reinstated and maintained.

The present suit was instituted by Mrs. Annie T. Frith, widow of Thomas P. Frith (a deceased son of Sarah A. Frith), in her capacity as natural tutrix of the minors, Alba G. Frith, Edwin T. Frith and Eleonora Frith, issue of her marriage with Thomas P. Frith. In her petition she recites the fact of the death of Mrs. Sarah A. Frith, and that she left an estate aggregating in value more than five thousand dollars. That she had left certain persons (whom she names) as her forced heirs; that she had made what purported to be a last will and testament by public act (which instrument she described), by which said instrument she disposed of her estate, and that said will had been probated.

Plaintiff averred the said will to be absolutely null and void for want of the observance of the legal formalities, and she attacked the judgment probating the same.

She averred that the bequests to Minnie and Sadie Frith, who inherited by representation through their deceased father, Charles E. Frith, and May Pearce, inheriting by representation, through her deceased mother, Minerva Pearce, all of whom were forced heirs, were null and void for the reason that the will did not desclose that the testatrix intended said legacies being bequeathed to said forced heirs, to be over and above thier *legitime* or over and above the legitimate portion of her other heirs as provided bylaw.

Should the court be of opinion that the judgment probating the will, was correct, she averred that said forced heirs, Minnie and Sadie Frith and May Pearce, were estopped from (availing themselves of) the probating of the will, for the reason that said heirs, appearing and acting through their representatives and tutors, Mrs. Annie T. Frith and W. O. Pearce, participated in the partition of the estate of the testatrix, Mrs. Sarah A. Frith, after her decease, and after the existence of said will and its contents had been brought to their notice and that of said representatives. That there was a legal and judicial partition of said estate among the said heirs, under the advice of family meeting, in which each heir was allotted his share, and that said will was treated by said heirs, legatees and family meetings as null and void, and the said legatees renounced whatever interest they might have had in and to said will, by participating and acquiescing in said partition. That the property bequeathed to Minnie and Sadie Frith and May Pearce and Mrs. Marshall exceeded by far the disposable part of said estate, and the bequests deprived the forced heirs of their *legitime*. Petitioner prayed for the citation of Minnie and Sadie Frith, through their tu-

trix, Mrs. Annie C. Frith, and May Pearce, through her tutor, W. O. Pearce, and Mrs. Verlinda Marshall, who was one o fthe special legatees in the will, and that there be judgment decreeing the last will and testament of Sarah A. Frith to be null and void and of no effect, and the heirs be allowed to retain their title and possession by virtue of the partition already made. She further prayed that should the will be upheld that the legacies to Minnie and Sadie Frith and May Pearce be declared nullities for the reasons set forth, and that said heirs and legatees be ordered to collate the same back to said succession for legal and equitable division, and in the event said will should be upheld *in toto,* that said legatees be ordered to contribute back into said succession sufficiently that the minor children of petitioner, who are forced heirs, might inherit and receive their legal portion.

Petitioner filed an amended petition, praying for citation upon May Pearce, directly, inasmuch as in framing her petition she was ignorant of the fact that said minor had been emancipated; she prayed that service of the amended petition be made upon the other parties. ·

The defendants, alleging that plaintiff's petition contained various demands, which could not be cumulated, moved the court to order them to elect upon which of them they would proceed. ,

They afterwards answered, pleading first the general issue; they then admitted the execution of the will and its probating, and averred the same to be legal. They averred that the plaintiffs, by the institution of the suit were thereby estopped from setting up an estoppel. They denied that the bequests made by the will exceeded the portion disposable by law by the testatrix, or that a decree reducing the same could be made in the pending proceeding. Further answering, they averred, should the court decide that the plaintiffs were not estopped by the institution of the suit from pleading estoppel against the defendants, May Pearce and Minnie and Sadie Frith, then that they were minors at the time of said partition, and, therefore, were not estopped by reason of said partition proceedings from asserting the validity of said last will and testament.

Mrs. Verlinda Marshall denied that she was a party to the act of partition. Defendants prayed that plaintiffs' petition be dismissed and their demands rejected, and for all necessary orders and decrees, and for general relief.

Minnie Frith, one of the defendants, died, after having married Williamson Hynson. She left a son, W. Ringgold Hynson, who was made a party, through his father, his natural tutor.

On the 9th of Junaury, 1900, the court rendered judgment, declaring that "the law and the evidence, being against the demand of the plaintiffs, and in favor of defendant, Mrs. Verlinda Marshall, it was by reason thereof, adjudged, and decreed, that the last will and testament of Mrs. Sarah A. Frith, deceased, attacked in this suit, be recognized as a valid and legal nuncupative will under private signature, and that the bequest made in said testament to the defendant, Mrs. Verlinda Marshall, be recognized and enforced, and that she is hereby decreed to be the owner of twenty-five acres of open land on the Talbot place. It is further ordered, adjudged and decreed, that the legacies and bequests made by said testatrix, Mrs. Sarah A. Frith, by her said last will and testament, to defendants, May Pearce, Sadie Frith and Minnie Frith (the said Minnie Frith being the deceased wife of Williamson Hynson, and who is herein represented by her said husband, in his capacity of natural tutor, of W. Ringgold Hynson, his minor son, issue of his marriage with said Minnie Frith) are severally and respectively null, void and of no effect, and said legatees are debarrd from inheriting legacies under said will by reason of their renunciation and abandonment of said legacies, and their acceptance of their respective shares in the succession of said Mrs. Sarah A. Frith, as her heirs at law.

The following entry appears in the minutes of the District Court of the 16th January, 1900, Judge Couvillon presiding.

"MRS. ANNIE T. FRITH, NATURAL TUTRIX,

   VERSUS

   W. O. PEARCE, TUTOR, ET AL.

On motion of plaintiff's counsel, made in open court, an appeal is granted in this cause, made returnable to the Supreme Court of Louisiana at its next regular session, to be held in the City of New Orleans, on the third Monday in April next, on her furnishing bond in the sum of one hundred and fifty dollars, for a devolutive appeal, and in the sum of five hundred dollars for a suspensive appeal."

On the 16th of January, 1900, the plaintiff executed an appeal bond in favor of the clerk of court, in the sum of six hundred and fifty dollars. The bond declares that, "whereas the above, Mrs. A. T. Frith, tutrix, has taken a devolutive and suspensive appeal, made returnable to the Supreme Court of Louisiana, from a certain final judgment rendered against her in the District Court in and for the Parish of Avoyelles, in favor of Mrs. Hardin Marshall, in said Number 9230 of the

docket of said court, entitled Annie T. Frith, Tutrix, vs. W. O. Pearce, Tutor, *et al.,* therefore, etc."

When the record was lodged in the Supreme Court, William O. Pearce, natural tutor of May Pearce, Annie C. Frith, natural tutrix of Sadie Frith, and Williamson Hynson, natural tutor of W. Ringgold Hynson, and May Pierce, answered this appeal, praying that the judgment appealed from be amended, in so far as it annulled the legacies made to May Pearce, Sadie Frith and Minnie Frith.

The judgment of this court, in this case, which we are asked to reconsider, was rendered under these pleadings and circumstances. It is pressed upon us, that we should not have amended the judgment upon the application so to do.

It is claimed that the plaintiff's appeal was simply from that part of the judgment which was adverse to their claims; that their appeal did not bring up that portion of it which annulled the legacies to May Pearce and Sadie and Minnie Frith; ,that these parties could have appealed themselves, if they were dissatisfied with the judgment, and could not seek relief therefrom by a prayer for an amendment. We are asked to alter our judgment in so far as it amended the judgment of the District Court, touching those particular legacies.

## Opinion.

Appellant complains that this court erred, in amending the judgment appealed from at the instance and on behalf of Sadie Frith and May Pearce and Ringgold Hynson. She insists that the only appeal taken by herself was from the judgment rendered in the District Court, in so far as it was in favor of Mrs. Marshall; that she did not intend to, nor did she appeal from the judgment, in so far as was against Minnie and Sadie Frith and May Pearce; that she certainly would not appeal from a judgment favorable to herself. An examination of the record discloses that the order for an appeal, following the language of the motion therefor was general; it did not refer to any particular part of the judgment, nor to the judgment, as it was in favor of or against any particular person. Appellant followed up the order of appeal by executing an appeal bond in favor of the clerk of court, and so perfected her appeal as applied for. All the parties to the action were, by these proceedings, made parties to the appeal. Appellant insists however, that the recital found in the condition of the bond, shows that the judgment she appealed from was the judgment against herself

in favor of Mrs. Marshall.   We do not think the scope of an appeal taken
in manner and form as this was, followed by a bond in favor of the
clerk of court, can be narrowed by a recital, such as the appellant
relies on.   The proper place to ascertain what appellant has appealed
from, is the motion for the appeal, and the order granted under it.
Any other course would be misleading, and might be greatly injurious
to the other litigants.   Appellant says that she can not legally be sup-
posed to have appealed from a judgment favorable to herself.   That
statement is too broad.   We have on several occasions sustained ap-
peals of that character.   A judgment may be apparently favorable to
a person, and yet be, for some reasons, unsatisfactory to him.   If she
appeals from the judgment, the appellant is not called upon to enquire
what the reasons may be for her conduct.   We do not mean to say,
that a person may not in some particular case so limit his prayer for
an appeal as to control its extent.   That is a matter unnecessary for
us to discuss at length; but that particular course was not followed
in this case.   We think that this right to limit the scope of an appeal
to a part of a judgment, if it exists, is subject itself, to limitations.   If
a person suing for five thousand dollars, obtains a judgment for twenty-
five hundred dollars, he can not limit his appeal to the portion of the
judgment against him; he can not split up his cause of action.   When
he appeals he brings the judgment up as an entirety and takes the risk
of opening the door for the other side to have the judgment amended.

Appellees took considerable risk in this case by not appealing them-
selves.   The situation of the parties to this litigation was this:   Mrs.
Sarah A. Frith executed a will in 1892, in which she made special lega-
cies.   1st.   Of one hundred acres of land on the Talbot place, to May
Pearce.   2nd.   Of fifty acres of cleared land on the Talbot place, to
Minnie Frith, and a like quantity to Sadie Frith.   3rd.   Of twenty-
five acres of open land on the Talbot place, to Mrs. Marshall.

The legacies were definite as to the quantity of the lands bequeathed,
and as to the plantation on which they were to be taken, but indefinite
as to their precise location.

This will was admitted to probate at the instance of Mrs. Marshall,
by an *ex parte* proceeding.

Notwithstanding this probate, the legal heirs of Mrs. Sarah A. Frith
proceeded to a partition among themselves of the Talbot place.

Mrs. Marshall was not a party to this partition.   The partition was

made on the advice of counsel that the will was null and void for want of proper form.

It is quite likely that the will would thereafter have disappeared from further consideration, had it not been for the present suit. The appellees in this suit had taken no steps whatever, so far as the record shows, to claim anything under the will, nor to contest the binding force of the partition. ,

The plaintiffs seem to, however, have been dissatisfied with the situation and apprehensive that an attack from some quarter, (probably from Mrs. Marshall) would be made upon the partition, and without waiting for this attack, they took the initiative and brought the present action against Sadie and Minnie Frith, May Pearce and Mrs. Marshall, claiming that the former were estopped from contesting the partition and by their conduct were estopped from taking anything under the will. Plaintiffs' main solicitude, it would seem, was to save the partition title from being set aside; the prayer of their petition being that "the will should be declared null and void, and that the heirs be allowed to retain their title and possession by virtue of the legal partition already made."

Assuming the possibility of the District Court's maintaining the will, plaintiffs prayed in the event of judgment to that effect, that the special legacies to Minnie and Sadie Frith and May Pearce be declared nullities for the reasons set forth in their petition, and that the said heirs and legatees be ordered to collate the same back to said succession for legal and equitable division, and should the will be upheld in *toto*, they prayed that the said legatees be ordered to contribute back into said succession sufficiently for the plaintiffs, who are forced heirs of the deceased, to inherit and receive their legal *quantum*. Mrs. Marshall was made a party defendant in the case.

The suit, as we have seen, terminated in the District Court by a judgment in favor of Mrs. Marshall, recognizing the validity of the will of Mrs. Frith, recognizing Mrs. Marshall to be entitled to the legacy made to her therein, and further decreeing the legacies to Sadie and Minnie Frith and May Pearce to be severally and respectively null and void and of no effect, and said legatees debarred from taking anything under said will, by reason of their renunciation and abandonment of said legacies, and the acceptance of their respective shares in the succession of Mrs. Sarah A. Frith, as her heirs-at-law.

This is the judgment from which plaintiffs appealed, and to which

Sadie and Minnie Frith and May Pearce asked an amendment. The judgment heretofore rendered by this court affirmed the judgment of the District Court, sustaining the validity of the will and amended it so as to maintain and reinstate the legacies in favor of Minnie and Sadie Frith and May Pierce.

We refused a rehearing, in so far as the validity of the will was concerned, and granted it on the other branch of the case, our main object being to ascertain whether, under the circumstances of the case, Sadie and Minnie Frith and May Pearce were entitled to ask and have accorded to them an amendment of the judgment.

Looking over the entire situation we find that Mrs. Marshall had obtained a judgment recognizing her legacy of twenty-five acres of land on the Talbot plantation, and that she was not a party to the partition proceedings, which plaintiffs seem to be apprehensive may be attacked. So far as the record shows, Mrs. Marshall is in a legal position to question the partition. Should she attack it, all parties should get the benefit of the rescission. A partition ought not to stand as to one and be set aside as to another .(C. C. 1412).

Whether the plaintiffs would not be as much protected without this suit against any attack on the titles conveyed in the partition proceedings, wherein Minnie and Sadie Frith and May Pearce were parties, as legal heirs, by so appearing, as they would have been as holding an additional legacy under the will, and whether this suit would aid them in this matter, may well be questioned. Zeigler vs. Creditors 49 Ann. 170; Benton and Milliken vs. Sentell 50 Ann. 877.)

The different demands made by the plaintiff in her pleadings, original, alternative and contingent, are so connected with each other and the rights of the appellees herein are so interlaced with those of Mrs. Marshall and the other heirs that it is difficult to separate them, and we think that Minnie and Sadie Frith and May Pearce were authorized to deal with the judgment as an entirety. We think the situation is so involved, and so much out of the usual order, that justice to all parties would be best observed by affirming the judgment of the District Court, in so far as it recognized the validity of the will of Sarah A. Frith, and by setting it aside, in so far as it decreed the "legacies made to Minnie Frith and Sadie Frith and May Pearce, to be severally and respectively null and of no effect, and said legatees debarred from inheriting said legacies under said will by reason of their renunciation and abandonment of said legacies, and their acceptance of

their respective shares in the succession of Mrs. Sarah A. Frith as her heirs at law," and by reinstating the legacies made by the said will to Minnie and Sadie Frith and to May Pearce, but leaving open to all parties for contest and adjudication in the future their respective rights and obligations under the said will, and as heirs-at-law of Mrs. Sarah A. Frith, except in so far as they are all closed by the present judgment.

For the reasons assigned herein, our former judgment is amended so as, after reinstating the said legacies to Minnie Frith and Sadie Frith and to May Pearce, to leave open for all parties for contest and adjudication in the future their respective rights and obligations under the will, and as heirs-at-law of Mrs. Sarah A. Frith, except in so far as they are closed by the present judgment. As so amended, our former judgment will remain undisturbed.

This cause is remanded to the lower court for further proceedings according to law.

PROVOSTY, J., takes no part, this case having been submitted prior to his taking his seat on this bench.