56 So.2d 418

**Succession of GUMBEL.**

**No. 40134.**

Dec. 10, 1951.

Rehearing Denied Jan. 14, 1952.

Thomas Barr, III., W. Blair Lancaster, Jr., New Orleans, for opponent and appellant.

J. Blanc Monroe, J. Raburn Monroe and Malcolm L. Monroe, all of New Orleans, for Monte M. Lemann, executor.

Walter M. Barnett, Jr., Eldon S. Lazarus, Leonard B. Levy, Charles Rosen and Louis L. Rosen, all of New Orleans, for Touro Infirmary, intervenor.

PONDER, Justice.

Cornelius Gumbel died in the City of New Orleans, Louisiana on June 6, 1948,

leaving an estate valued at more than one million dollars. He left an olographic will and several codicils bequeathing various persons legacies and bequeathing the residue of his estate to Touro Infirmary to be used for the construction and equipment of a nurses' home to bear his mother's name as a perpetual memorial to her. Prior to his death, on April 23, 1948 he addressed a letter to the President of Touro Infirmary, which reads as follows:

"I am enclosing herewith for your confidential information a copy of my will and of several codicils which I have made thereto, all of these being in olographic form except the most recent codicil, which is a nuncupative act under private signature. You will note that after providing for several special legacies, I have left the residue of my estate to Touro Infirmary.

"I desire now to increase the amount of my cash legacy to Nathan Goldwater from $10,000 to $25,000. I also desire to provide an annuity of $35.00 a week for my night nurse, Mrs. Ella Rieras, in addition to the legacy of $10,000 cash for which I have already made provision.

"I am very sick and do not feel physically equal to the strain of making another codicil to my will, even by nuncupative act. I am, therefore, writing to ask you to give me your assurance and agreement that in consideration of my permitting my legacy to you to stand you will see to it that Mr. Nathan Goldwater and Mrs. Rieras receive the additional sums mentioned in this

letter, even though I do not make any codicil to that effect.

"In my original will I have provided that my executor should retain in his hands a capital sum sufficient to cover the annuities which I have provided.

"It will, however, be satisfactory to me upon receipt of the assurance herein contained to permit my executor to pay over the residuary estate to you if Touro Infirmary will execute a binding agreement satisfactory to my executor guaranteeing all the annuities for which I have provided, including the annuity mentioned in this letter, and this will be my authority to my executor to so provide."

The President of Touro Infirmary wrote and signed the following statement at the bottom of the letter, viz.: "The undersigned, Touro Infirmary, hereby agree that in consideration of the residuary legacy to it above mentioned, and in further consideration of the provisions of the last paragraph of the foregoing letter, it will see to it that the legacy to Nathan Goldwater and the annuity to Mrs. Ella Rieras, above mentioned, are duly paid, and that all of the other provisions of the will and codicils of Cornelius Gumbel are carried out."

On June 13th, after the death of the testator, the Board of Directors of Touro Infirmary adopted a resolution confirming the action of its president of date April 23, 1948 and ratifying the agreement in order that it might be approved by the court and that the executor be authorized to carry

out the provisions contained in the letter and agreement of April 23, 1948. On June 14, 1949 the executor prepared a petition requesting the court to authorize him to carry out the provisions of the agreement set forth in the letter of April 23, 1948 and accordingly to pay Nathan Goldwater the sum of $25,000.00; to make provisions for the payment of an annuity of $35.00 a week to Mrs. Ella Rieras; and in due course to pay over the residuary estate to Touro Infirmary, upon the execution by it of a binding agreement guaranteeing all the annuities for which the decedent provided, including the annuity mentioned in the letter of April 23, 1948. The petition contains the following agreement signed by all of the legatees except Touro Infirmary, viz: "The undersigned annuitants under the will and codicils of Cornelius Gumbel, in consideration of their mutual agreements and in consideration of the filing of the foregoing by petitioner, hereby consent to said petition and request the Court to enter the order therein prayed for."

The petition was filed in court on the next day and the court executed an order dated June 15, 1949 authorizing the executor to carry out the provisions of the agreement with Touro Infirmary, as set forth in the petition. On July 29, 1949 Mrs. Vivian Sintes Levie, one of the legatees who had signed the petition, brought proceedings attacking the order of June 15, 1949 authorizing the testamentary executor to carry out the provisions of the agreement of April 23, 1948, alleging that she was unaware of her rights at the time she signed the petition and that her consent was given under a mistake as to the effect of it on the legacy provided for her in the will and codicils of the decedent. The executor filed a provisional account on April 30, 1950 in which he proposed to carry out the provisions of the agreement set forth in the letter of April 23, 1948. Mrs. Levie opposed the account on the ground that adequate provision was not being made to carry out the legacy bequeathed to her by the decedent of $180 per month. Shortly thereafter, Mrs. Levie petitioned the court to remove the executor. We will not recite the proceedings dealing with the petition to remove the executor because the appellant is not urging any error on the part of the trial court in its refusal to remove the executor. It appears that the executor has paid Nathan Goldwater the sum of $25,000 and is continuing to carry out the provisions of the agreement of April 23, 1948 by paying Ella Rieras the sum of $35 per week.

The executor answered the opposition interposed by Mrs. Levie, calling attention of the court that he had proposed in the account to retain $60,000 of United States Government Bonds to protect the legacy of Mrs. Levie, and submitted a proposed mortgage to be executed by Touro Infirmary purporting to guarantee her annuity and those of other legatees on valuable property, located in the City of New Orleans, sufficient to take care of the annuities. On

trial of the petition to set aside the order of June 15, 1949 and the opposition to the account, the lower court refused to rescind the order and denied the opposition to the account and held that Mrs. Levie must accept the proposed mortgage because in its opinion she was more amply secured than she was under the will and codicils of the decedent. Mrs. Levie has appealed from this judgment of court.

The appellant contends that the contract between Cornelius Gumbel and Touro Infirmary was expressly prohibited by law and that it cannot form the basis of a valid and binding contract. She cites many articles of the Civil Code and decisions of this court and the Supreme Court of the United States in support of the contention. The authorities would be pertinent if the contract, as such, was being sought to be enforced. The transaction of April 23, 1948 was not a confected contract because the President of Touro Infirmary had not been authorized by a resolution of the board of directors of that institution to enter into the agreement. In the proceedings, the executor is seeking to carry out the wishes of the deceased as expressed in the letter of April 23, 1948. He is not a party to the purported contract and is not in fact endeavoring to enforce the purported contract as such. He evidently realized that the contract, as such, could not be enforced because of the action taken after the death of the testator. The resolution of the Board of Directors of Touro Infirmary, aft-

er the death of the testator, was adopted at the instance of the executor in order to carry out the wishes of the decedent. The appellant and other legatees who joined in the petition evidently did so for the same purpose. Irrespective of what the transaction of April 23, 1948 might be termed, it is neither a will nor a confected contract. While this transaction cannot be considered a will or a confected contract, the wishes of the decedent are expressed therein and they are sufficient consideration to support the agreement entered into by the legatees after his death because it is a natural obligation on the part of the legatees to perform the will of the donor. Article 1846, Revised Civil Code. The natural obligation is sufficient consideration for the agreement entered into between the parties after the death of the testator. Articles 1758 and 1759, R.C.C. Irrespective of the terms used in the proceeding brought by the executor and agreed to by the legatees, it is nothing more than an agreement and proceeding to carry out the wishes of the deceased. If language had been used stating that it was the desire of all the interested parties to carry out the wishes of the decedent, there certainly could have been no question that the agreement of the legatees was binding and that the order of the court, granted in pursuance to the agreement, was valid and binding. The mere fact that it is stated in the petition that the executor prays that he be authorized to carry out the provisions of the agreement of April 23, 1948 does not change the situation because

the provisions in the purported agreement of April 23, 1948 are nothing more than expressions of the wishes of the deceased relating to the disposition of his property. There could have been no reason for the actions taken after the death of the testator other than to carry out his wishes. The appellant has suffered no injury in consequence thereto because it does not interfere with her annuity. The additional legacies will necessarily come out of the residue of the estate bequeathed to Touro Infirmary. This court has on all occasions endeavored, whenever possible, to carry out the intentions and wishes of a testator in the disposition of his property. In the furtherance of this policy, this court has always endeavored to give effect to proceedings instituted for that purpose and has looked to the purpose of the proceedings rather than the inadvertent use of words therein. We are convinced that the agreement and the proceedings instituted after the death of the testator were prompted by the wishes of the parties to carry out the will of their testator who had been beneficent to them by providing legacies when otherwise they would have had no interest in his succession.

■ The appellant contends that there was no meeting of the minds between the parties to give rise to a valid contract, even if there had been a lawful cause. The trial court was convinced from the evidence that the appellant was fully advised and understood what she was doing when she signed the agreement and that there was no misrepresentation or unfair statements made to her by the executor whose only interest was to carry out the known wish of the decedent. We have examined the testimony and find that his summation of the evidence is correct.

■ The appellant contends that the proposed mortgage of $150,000 is inadequate to secure the payment of the annuities. The appellant also questions the authority of Touro Infirmary to enter into the agreement and to execute the mortgage securing it. The charter of that organization specifically authorizes it to sue and be sued and to mortgage its property. The trial judge was of the opinion that appellant was more amply secured by the arrangements than she would have been otherwise. We find nothing in the record that would justify us in reaching a different conclusion.

The appellant in her brief states that many attempts were made by Mrs. Levie to have the executor carry out the will and codicils of the decedent and that attempts at compromise and adjustment of the matter had been made. We note that the trial judge states in his written opinion that he refrained from entertaining the thought that the action taken by the appellant was for the purpose of effecting a cash settlement and that such a result would be in direct contravention of the wishes of the testator. We have carefully examined the record in this case and are frank to say

that it is difficult for us to understand the purpose of the appellant by the actions taken by her if they were not taken with the view of effecting a cash or lump-sum settlement. The wishes of the testator, expressed in the letter in controversy, that certain legacies be paid in no manner infringes upon her annuity and in fact must come out of the residue of the estate which Touro Infirmary was to receive. We cannot see how the proposed arrangements with relation to securing her annuity has placed her in a more insecure position in respect thereto. In fact, it would appear that her annuity is made more secure.

For the reasons assigned, the judgment of the lower court is affirmed at appellant's cost.

MOISE, J., takes no part.