134 So.2d 619 (1961)
Mary CONDON et al., (Plaintiffs and Appellants),
v.
Albert McCORMICK et al., (Defendants and Appellees).
No. 349.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1961.
Rehearing Denied November 29, 1961.
*620 Joseph A. Gladney, Baton Rouge, Fruge & Foret, by Jack C. Frugé, Ville Platte, for plaintiffs-appellants.
Stafford & Pitts, by John L. Pitts, Alexandria, Fusilier, Pucheu & Soileau, by J. W. Pucheu, Ville Platte, for defendants-appellees.
Before CULPEPPER, HOOD and PONDER, Judges.
PONDER, Judge ad hoc.
This case is on appeal before us contesting the validity of a nuncupative testament by private act. It was consolidated in lower court for trial, and by stipulation of counsel was consolidated for the purpose of hearing in this court with a companion case involving practically the same issues and the same defendants, but with different plaintiffs appearing in those cases. This suit and its companion suit are the last of a series of suits which were filed over a period of thirteen years between most of the parties plaintiff and the same parties defendant, or their predecessors in title. The suits involve a testament executed by John Walter McCormick (sometimes spelled McCormack) who departed this life on September 29, 1934.
The will was duly probated in the Thirteenth Judicial District Court, Evangeline Parish, Louisiana, on December 1, 1934 and the legatees under said will, Albert and Neil McCormick, were placed in possession of the property on the same date by judgment of the court. Since that date, one of the legatees, Neal McCormick, has departed this life in the year 1944, leaving as his only heir Milton McCormick, who is a defendant in this suit. The sole real property of decedent consisted of eighty acres of land at Turkey Creek in Evangeline Parish, Louisiana.
Since that time, the defendants and predecessors in title have been in possession of this property and have exercised full rights of ownership in leases and sales on the property and have successfully defended several lawsuits in connection with their rights in connection therewith.
The testator, John Walter McCormick, was a bachelor and left no ascendants, and the numerous attacks that have been made *621 on this will are made by relatives in the collateral line.
Since the record is voluminous and includes the various records in the five suits filed, we think it necessary to discuss here in chronological order the suits previously filed, as filed and included in this record. For the sake of clarity, we shall refer to the suits by District Court numbers on the probate docket of the Thirteenth Judicial District of Louisiana, Parish of Evangeline.
Before proceeding to discuss the cases in that order, it might be noted that Roy O. Martin Lumber Company, Inc. and Gifford-Hill & Company, Inc. were made parties defendant; but by various pleadings filed, they have been dismissed from the suits.
After the probate of the will and the placing of the present defendants and their predecessors in title in possession of the property on December 1, 1934, the first attack made on this will was on September 25, 1939, in suit styled "Estate of John Walter McCormick" No. 995, by several plaintiffs purporting to be heirs of John Walter McCormick, who are plaintiffs in this suit also, or represented herein by their heirs, in which it was alleged that the will was null and void for the reason that it did not show a testamentary intent or disposition; was not in intelligible language and the requirements of the law were not followed in its confection. This suit was dismissed on October 26, 1944 for lack of prosecution and as an abandoned action; five years having elapsed. No appeal was taken from this judgment.
No additional attack was made on this will until March 11, 1946 when suit styled "Mary C. Singletary, et als vs. Albert McCormick, et als," No. 6466, was filed by the same plaintiffs, or their heirs, attacking the validity of the will. This record appears to have been lost and, at the request of the District Court, was reconstructed and filed in these proceedings. All of the pleadings are not in the record, but from a reading of the briefs and the judgment, it appears that the attack was made on the validity of the will on the ground that it did not dispose of any property by language or intent; the document was not signed by the testator, who could sign, and no statement was contained that he was unable to sign. Defendants filed exceptions of no cause or right of action and prescription of one, five and ten years; plea of estoppel and res judicata. On May 28, 1946 this case was taken up in District Court and the plea of five years' prescription was sustained, with an observation by the court that the exception of no cause of action was well taken, holding also that the will expressed the intent on the part of the testator. No appeal was taken from this judgment.
On August 16, 1947, suit No. 6865, was filed by Melva Mae McCormick, wife of Levy Johnson (now the wife of Joseph A. Gladney) who was a grandniece of the deceased, John Walter McCormick. In that suit, the validity of the will was attacked for the reason that it did not dispose of property by language or intent and was not signed by the testator, who could sign his name, and no statement was contained therein that he could not sign. This is the suit which was consolidated with the one now under consideration.
In all of the above suits, at all times the plaintiffs alleged that the deceased was domiciled in Evangeline Parish, but died in Rapides Parish while temporarily residing there. Nowhere in the record is there any allegation that he was domiciled in Rapides Parish until a supplemental petition was filed on August 11, 1952 in the above numbered suit.
On September 3, 1952, in suit No. 995, practically all of the heirs appeared in this suit in Evangeline Parish and filed an exception to the jurisdiction, alleging that Rapides Parish, rather than Evangeline Parish, was the court of proper jurisdiction, and moved to consolidate suits numbered 995, 6865 and 8756. This matter was duly fixed for trial on the question of jurisdiction, and *622 evidence was taken on October 28, 1952. On February 19, 1954 judgment was rendered overruling the exception to the jurisdiction, and motion to consolidate probate proceeding No. 995 with suits numbered 6865 and 8756 was denied. From this judgment no appeal was taken. Counsel for plaintiffs in his prolix brief in this court, stated that they "accepted" the judgment of the court in that case for the reason that the exception to the jurisdiction was overruled on a procedural question. We cannot agree with this position. The evidence was taken on the question of jurisdiction and was thoroughly discussed in the judgment overruling the exception to the jurisdiction. Only one paragraph of the four page judgment was devoted to the procedural question. If the District Court had intended to decide the exception to the jurisdiction on a procedural question, it would not have reviewed the law and evidence as extensively as it did in the judgment and would have dismissed the exception on a procedural question, rather than considering all of the law and evidence in the case and overruling the exception. After a review of the evidence, we are of the opinion that the ruling of the District Judge on the question was correct and that the Thirteenth Judicial District Court of Louisiana, Evangeline Parish, was the proper forum for adjudication of the rights of the parties herein. As previously stated, all parties, most of whom appear in this suit, had in their prior suits over a period of thirteen years so alleged.
On September 11, 1952, suit styled "Mary Condon, et al vs. Albert McCormick, et al, No. 8756" was filed by all of the heirs of the deceased, John Walter McCormick, alleging that decedent was domiciled in Rapides Parish at his death, and attacking the jurisdiction of the court in Evangeline Parish. Further attack was made upon the will that it was not the act and deed of the testator as it was not dictated, proved or signed by him and that the testator was incapable, mentally and physically, of making a will; also alleging fraud in the confection of a will. To these allegations the defendants pleaded res judicata as to some of the plaintiffs and prescription of one, five and ten years, and laches.
Under date of March 20, 1956 the exceptions filed in the consolidated cases numbered 6865 and 8756 were fixed and agreed to be submitted to the court on briefs; but briefs were not filed until February 25, 1959, resulting in a judgment under date of May 14, 1959 overruling the exceptions for the reason that prescription did not run against fraud and allowing the suits to be tried and submitted on the question of fraud; but in effect sustaining exceptions otherwise; also holding Evangeline Parish to be the domicile of the deceased.
After hearing evidence on this question, the District Court in judgment held that all attacks on the will of the deceased were prescribed or had been judicially decided adversely to the plaintiffs, except the direct attack upon the will for fraud in its confection. We find no fault with this opinion of the District Court except that it was in error in so deciding as to plaintiff Melva Mae McCormick Gladney. Nowhere in the record does it appear that there had been any adjudication of her rights on this, or in any other suit, other than on the question of jurisdiction in suit No. 995, and which was decided adversely to her on February 19, 1954; from which she did not appeal and by which she is bound. Prescription in this case is governed by the provisions of LSA-C.C. Art. 3542, which provides:
"The following actions are prescribed by five years:
"That for the nullity or rescission of contracts, testaments or other acts.
"That for the reduction of excessive donations.
"That for the rescission of partitions and guarantee of the portions.
"This prescription only commences against minors after their majority."
*623 The birth certificate filed herein shows that she was born August 22, 1926. She was married in the year 1945 and filed her suit on August 16, 1947. It is immaterial whether the five years began to run after her emancipation by marriage, or on reaching the full age of majority, as either date would bring her within the five years prescriptive period within which to file the suit. Therefore, the plea of prescription and other exceptions should be overruled as to her. This trial on the merits was had on the question of fraud; the court having sustained the pleas of prescription and res judicata. However, in order that the best interest of justice may be served in this case, we think it would be well to discuss and pass upon all issues raised in the case. Upon trial had on the merits in this case, there was judgment in favor of the defendants and rejecting the demands of plaintiffs at their cost.
It is the contention of the plaintiffs that their rights are imprescriptible for the reason that the testament is an absolute nullity, and several cases have been cited to support their position. An absolute nullity of an instrument renders it imprescriptible; whereas, a relative nullity is prescriptible. Succession of Smith, 182 La. 389, 162 So. 21. We do not consider the cases apposite or appropriate here in view of our findings hereinafter set forth.
The two cases which were consolidated are so interrelated and interwoven as to the issues and parties plaintiff, that we feel that a full discussion of these issues should be had as to them interchangeably. Confluently over the years they have been merged to such an extent that all issues may be herein decided. Counsel for plaintiffs in his brief calls attention to the fact that some of the matters were not passed upon by the District Court as to Melva Mae McCormick Gladney, one of the plaintiffs herein, and asks that this court pass upon those issues. We agree with counsel on this, and sufficient evidence is before the court in all the suits in which this may and will be done.
Further attack is made on the validity of the document as being unintelligible and that it did not dispose of the property by language or intent. We do not agree with this contention of plaintiffs. The will provides that "I the undersigned John Walter McCormack do here by and here do declare this to be my last will and testement regarding will in favor of Albert McCormack and Neil McCormack, my nephews, whom I have resided with in my last days, and who have also supported and cared for me." From a reading of the will, there can be no doubt that the testator intended the will to institute Albert and Neil McCormick as legatees. The testator, after stating that this was his last will and testament in favor of the legatees therein named, declared his intention to devise to the legatees all of the property in the following words: "The following property which includes land at Turkey Creek and any other property or earthly positions (possessions) belonging to me." The law favors testacy over intestacy.
The only land shown to have belonged to decedent was eighty acres of land located at Turkey Creek, Louisiana. Since there is the additional statement that any other property or earthly possessions belonging to him were being disposed of, it expresses the intent of the testator. Succession of Marks, 35 La.Ann. 1054; Succession of Sullivan, 178 La. 230 151 So. 190.
In the comparatively recent case of Succession of Elliott, 237 La. 457, 111 So.2d 344, 346, it was held:
"* * * To ascertain that intention [of testator], the language of the will is generally to be understood in its popular meaning and without attending so much to the niceties of rules of grammar. Penny v. Christmas, 7 Rob. 481; Hasley v. Hasley, 25 La.Ann. 602; Succession of McBurney, 165 La. 357, 115 So. 618; Delaureal v. Roguet's Succession, 177 La. 815, 149 So. 464; Succession of Price, 202 La. 842, 13 So.2d 240, 244.

*624 "`A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.' LSA-Civil Code, Article 1713."
It is well settled that the court shall wherever possible carry out the wish of the testator in the disposition of his property. Succession of Gumbel, 220 La. 266, 56 So.2d 418; Heikamp v. Succession of Solari, La. App., 54 So.2d 347; Succession of Earhart, 220 La. 817, 57 So.2d 695.
We quote from the case of Succession of Fertel, 208 La. 614, 23 So.2d 234, 238.
"It is evident from a reading of the will that it was written by the testatrix without the aid of counsel. The law is indulgent in all such cases. It exempts language from technical restraint and obeys the clear intention however informally conveyed. If obscured by conflicting expressions, it seeks the intention in a purpose, consistent and rational, rather than the reverse; and, of two interpretations, it selects that which saves from total intestacy. The testator's intention is his will. This is the first rule of interpretation, to which all others are reduced. The intention must be enforced as far as it can be done legally. Succession of Blakemore, 43 La.Ann. 845, 9 So. 496.
"When a will is executed, a reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption that he intends to die intestate as to any part of his estate when the language he uses will clearly carry the whole."
From a reading of the testament, we are of the opinion that it is intelligible and expresses the intent of the testator and properly disposes of his property.
The attack made on this will that the document was not signed by the testator, who could sign his name, and no statement was contained therein as to why he did not do so, is not tenable for the reason that a statement in the will as to why he did not sign, or was hindered from signing the testament, applies to nuncupative testament by public act, rather than to nuncupative testament by private act. Frith v. Pearce, 105 La. 186, 29 So. 809.
As authority for the testator to be assisted by one of the witnesses in affixing his mark is Succession of Bush, 223 La. 1008, 67 So.2d 573. In that case the testator had suffered a paralytic stroke and was assisted by one of the witnesses in making his mark as his signature on a nuncupative testament by private act; as was done in this case. We, therefore, are of the opinion that the signature was properly executed by the testator in affixing his mark with the assistance of one of the witnesses.
We discuss now the contention of the plaintiffs as to the physical and mental incapacity of the testator to make the testament. No evidence was taken in this matter until the year 1952, (although the testator died in 1934) which was long after some of the witnesses to the testament had died. The memory of some of the others would of necessity be not as clear after this lapse of time from the execution of the will. Other suits had been previously filed by several of these plaintiffs, which had been abandoned or decided adversely to the plaintiffs, and at no time until the year 1952 does there appear any claim of fraudulent action in the confection of the will or the mental incapacity of the testator. Long lapse of time in asserting a claim, when unexplained, subjects the plaintiff's case to severe scrutiny and exacts of him a higher degree of proof than would otherwise be required of him, and the court will look with more indulgence on evidence as adduced by the defendant. Labarre v. Rateau, 210 La. 34, 26 So.2d 279. It impresses us as strange, even to the point of skepticism, that some eighteen years had elapsed after the death of the testator before the element of fraud or mental incapacity of the testator should be injected for the first time.
*625 It is well settled in our law that sanity and testamentary capacity is presumed, and the person attacking the will has the burden of alleging and proving lack of such capacity when the will was executed. McCarty et al. v. Trichel et al., 217 La. 444, 46 So.2d 621 (and cases cited therein.) See also Succession of Vicknair, et al., 126 So. 2d 680; Succession of Holland, 236 La. 8, 106 So.2d 697.
There is no medical testimony in the record to indicate the nature of the testator's last illness, but it appears from the testimony that the testator suffered a stroke of some kind a day or two prior to the date of the execution of the instrument. This testament was written and witnessed by laymen without the services of an attorney or notary public. The evidence shows that as a result of the stroke or illness suffered by the testator, he was unable to speak, or could speak only with difficulty, and that he needed assistance physically in making his mark on the testament. It is further shown that the testament was typed by Mr. W. H. Brooks, who was station agent at Woodworth, Louisiana, and he was assisted by Mr. Noah Wise, who was the postmaster at Woodworth, Louisiana. These two, together with four other witnesses, were present at the time. There is a statement in the testament by the testator that "I am in sound and sane mind at the time of this signing here on." We do not believe these parties, whose character has not been impugned, and who were friends of the testator and his family, would have confected and signed the will if there had existed a mental incapacity on the part of the testator to understand and execute the will at that time; or fraud sought to be perpetrated; nor would the other witnesses thereto have participated therein.
It is medically correct to say, that although one might suffer a stroke which might impair his physical capacity and impair and impede his speech even to the point of speechlessness, his mental capacity might not be materially impaired. The information for the confection of the will was obtained from the testator by question and answer and the testator expressed his wishes and intention by nodding his head in the affirmative in response to questions. There is nothing to show that he could not have expressed himself negatively as easily.
There is ample authority that in the preparation of a nuncupative testament by public act, it is considered as dictation the writing down by the notary public the substance of the testator's wishes and disposition rather than word by word dictation; further that this information may be elicited by question and answer rather than by dictation of the testator on his own impulse, where there is no influencing of the answer. It might be contended with equal force that the same procedure might be followed by the amanuensis in the preparation of a nuncupative testament by private act. However, we do not find it necessary to pass upon that question here.
The codal articles governing the execution of a nuncupative testament by private act are provided in LSA-C.C. Art. 1581 and Art. 1582.
"Art. 1581. A nuncupative testament, under private signature, must be written by the testator himself, or by any other person from his dictation, or even by one of the witnesses, in presence of five witnesses residing in the place where the will is received, or of seven witnesses residing out of that place.
"Or it will suffice, if, in the presence of the same number of witnesses, the testator presents the paper on which he has written his testament or caused it to be written out of their presence, declaring to them that that paper contains his last will."
"Art. 1582. In either case, the testament must be read by the testator to the witnesses, or by one of the witnesses to the rest, in presence of the testator; it must be signed by the testator, if he knows how or is able to sign, and by the witnesses or at least *626 by two of them, in case the others know not how to sign, and those of the witnesses who do not know how to sign, must affix their mark.
"This testament is subject to no other formality than those prescribed by this and the preceding article."
It will be noted that beginning with the second paragraph of Article 1581 above, there is a provision also in the preparation of a nuncupative testament by private act wherein it is not necessary that it be dictation by the testator.
It is not necessary that there be a manual presentation of the will by the testator, as acknowledgment of the testator that the paper contains his last will implies the presentation provided by law. The testament may be written in the presence of the witnesses. Further, the acknowledgment of the testator that it was his will may be in response to a question. Bourke v. Wilson, 38 La.Ann. 320; Succession of Reems, 115 La. 102, 38 So. 930; Ducasse's Heirs v. Ducasse, 120 La. 731, 45 So. 565; Succession of Guidry, 135 La. 314, 65 So. 319, and other cases cited with approval in Succession of Bush, 223 La. 1008, 67 So.2d 573.
Legal presumption exists in favor of the validity of a testament and the burden of proof rests upon one who attacks the validity of a will, duly probated, to prove its invalidity. Stephens v. Adger, 227 La. 387, 79 So.2d 491; Succession of Vicknair, La.App., 126 So.2d 680.
We are of the opinion that the testator was mentally competent and when questioned as to the named legatees, he nodded his head in the affirmative and made an effort to speak. The will was then prepared by one of the witnesses, and after the will was written in the presence of the testator and the witnesses, it was read to all of them in the presence of the testator. The testator was then asked if it was his will and he again nodded his head in approval, signifying that it was. It was signed by the testator and witnesses in the presence of each other. We are of the opinion that this is substantial and sufficient compliance with the formalities in the above quoted codal articles as to a nuncupative testament by private act.
The last issue to be considered by us is on the question of fraud in the confection and preparation of the will. We agree with our learned brother of the District Court that no fraud has been proven in this case. The evidence preponderates that neither of the legatees or beneficiaries took any part in the proceedings during which the will was written, witnessed and signed, and that all of the witnesses to the will at that time understood that it was the intention of the testator to leave his property to the two legatees named in the will. Fraud must be alleged and the burden is upon him, who alleges it, to prove it. This burden of proof is more onerous in view of the lapse of some eighteen years before it was injected into these proceedings. We find that the plaintiffs have failed to carry this burden, and there is no satisfactory proof of fraud or fraudulent action on the part of anyone present at the time that the will was written, witnessed and signed by the testator.
For the reasons hereinabove set forth, the judgment of the lower court as to all plaintiffs herein is affrmed. All costs of this appeal are assessed against the plaintiffs.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE and FRUGÉ, JJ., recused.