## FUSELIER (F. M. C.) *vs.* MASSE ET AL. (F. P. C.)

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, THE JUDGE OF THE SEVENTH PRESIDING.

An instrument passed before a Spanish commandant, in the form of a notarial act, purporting to be an act of adoption, is insufficient to confer all the rights and privileges, under the Spanish laws, on the adopted child.

Adoption, by the Spanish laws, could only take place by the authority of the king; or by a judicial decree, rendered on a petition presented to the judge.

It is only in acts which cannot subsist but by the validity of all their parts, that the nullity of one portion draws with it the nullity of the whole.

But though an act of adoption be invalid, as such, yet the donation contained in it, by making the child the universal heir of the donors to their property after death, gives the donee capacity to receive, independent of the adoption.

An acceptance is not required by the Spanish laws, to give effect to a donation, *mortis causa;* and in donations *inter vivos*, it was only required to deprive the donor of the power of revocation, when delivery did not accompany the gift.

Subsequent changes of disposition of property, in a will which is invalid, show a sufficient intention of a change of mind, as will revoke a former donation.

The plaintiff claims the succession of one Magdelaine Masse, deceased, on the ground that he was the adopted son of her and her late husband, Etienne Sem Fusilier, both f. p. c. He shows that he was purchased, as a slave, from A. Solieau, by the said Magdelaine and Etienne Sem, and emancipated by them in a public act, passed in 1797, before Martin Duralde, commandant of Attakapas and Opelousas, in which he was acknowledged as the natural son of Etienne Sem; and by a subsequent notarial act, passed before the same authority, in June, 1799, he was duly adopted by them, as their child and heir. He now claims their property in the same right as if he had been a child born of their lawful marriage. As such heir he claims the tract of land and improvements, whereon the said Magdelaine lived at her death, which the defendants withhold, and also the balance of the succession. He prays to be recognized as the sole heir of the deceased, and to be put in possession of all her estate.

The defendants, Rosalie, Jean François, together with Annette Masse, allege, that they are the brothers and sisters of Magdelaine Masse, deceased, and as such collateral heirs, are entitled to her succession, in preference to the plaintiff. They say the acts of 1798 and 1799, by which the plaintiff claims to be emancipated and adopted by Etienne Sem and Magdelaine, are null, because the plaintiff was a slave before passing them, and could not be legally adopted, &c. That

the said acts were made on condition that the plaintiff should
assist the said Etienne Sem and Magdelaine, and not aban-
don them to the end of their lives, but which they say he has
done.   That in consequence, said Magdelaine in her will
(which was annulled for want of the requisite formalities),
revoked the previous act adopting him as her son, and be-
queathed her property to the other heirs, except a legacy to
the plaintiff, which he accepted and received from the
executor of said will.

The defendants had judgement for the whole of the suc-
cession claimed by the plaintiff, who is inhibited from setting
up any title to the same against the defendants.   The plaintiff
appealed.

It appeared in evidence, that the plaintiff was the natural
and adopted son of Etienne Sam, and that the latter died
without ever revoking the act of adoption.   The wife was
the survivor of them, who kept possession of all the property
until her death.   She left a will, bequeathing the estate to
her collateral heirs, except a small legacy bequeathed to the
plaintiff.   This will was declared invalid for want of the
requisite formalities.   The plaintiff then sued for the whole
of the estate.

PORTER, J., delivered the opinion of the court.

In the year 1782, two people of color, Etienne Sam and
Jeannette, entered into a contract of marriage before the
commandant of Attakapas and Opelousas; and by the same
act agreed, that in case there were no issue of the marriage,
the survivor should take all the property, whether proper or
acquired, that existed at the termination of the coverture.

There were no children from the connexion; but the hus-
band had a natural son, who was a slave of one Soileau.   In
May, 1797, Soileau promised to sell this slave to the husband,
on the condition that he was to give him his freedom;
whether any regular sale took place in pursuance of this
promise, the record does not inform us; but in the month of

WESTERN DIS.
Sept. 1832.

FUSILIER
vs.
MASSE ET AL.

August following, we find the father, by public act, emancipates his son, in conformity to the promise he had made to his former master, when the latter made the sale to him; the slave so emancipated, is the plaintiff in the present action, and he claims all the property the father and wife died possessed of, in virtue of an authentic act, by which they adopted him as their child.

An instrument passed before a Spanish commandant, in the form of a notarial act, purporting to be an act of adoption, is insufficient to confer all the rights and privileges under the Spanish laws, on the adopted child.

This act appears to have been executed before the commandant of Opelousas on the first day of June, 1799. The parties declare, that not having children by their marriage, they are desirous of nominating an universal heir to their estate; that for this purpose, they adopt the father's natural son, Pierre, with all the rights which that quality can confer on him; and that they institute him their only and universal heir after their death, of all their present and future property; only requiring in return, that he will assist them and not abandon them for the remainder of their lives. Two other clauses are contained in this instrument; one, by which the wife is stated to have declared on oath, that she executed the act without restraint, and of her own free will and accord; the other, by which it was agreed that it should not be annulled, except by the mutual consent of both husband and wife.

The husband died first, without any act of revocation; the wife, before her decease, executed her last will and testament, by which other dispositions were made of the property, although, by this will, a considerable portion of her estate was bequeathed to the plaintiff. A contest arose between the heirs of the wife and the plaintiff, in relation to the validity of this instrument; the latter endeavored to maintain it, but by a judgement of this court, it was pronounced null, for want of the formalities which the law required.

The plaintiff has, since the decision of that suit, instituted this action, by which he claims the whole of the estate, of which his adopsed mother died possessed. The answer asserts the defendants to be the legal heirs of the deceased, who died intestate; that the act of adoption was not made

pursuant to the laws of Spain then in force in Louisiana, and could confer no right on the plaintiff; that it was made on conditions which the plaintiff failed to perform; and, finally, that this act of adoption was revoked by an instrument, executed by the deceased, which though not good as a last will and testament, was valid as an act of revocation.

By the laws of Spain, adoption could take place but in two modes; one by authority of the king, and the other by authority of justice, on petition presented to the judge, proof administered of the facts on which the law permitted the act, and a judicial decree rendered on the evidence given. In the present case none of these formalities appear to have been pursued. The instrument was passed before the commandant in the form of a notarial act. The maxim *omne rite acta* has been pressed into the cause of the plaintiff, but the maxim has its limits, and we cannot presume both a decree and the formalities which should have preceded it. *Febrero, p.* 1, *cap.* 15, § 1, *nos.* 1, 6, 33—5.

*Adoption by the Spanish laws could only take place by the authority of the king, or by a judicial decree rendered on a petition presented to the judge.*

We are, therefore, of opinion, that the instrument produced in this cause, did not constitute the plaintiff the adopted son of the parties whose intention was to make him such. The next question is, whether the donation contained in it falls, as a consequence of the act of adoption being invalid.

As the donors had no forced heirs at the time the donation was made, and died without any, the donee had the capacity to receive, independent of the adoption. We, therefore, think that part of the instrument by which they gave him their property after their death, was valid and should take effect. It is only in acts which cannot subsist but by the validity of all its parts, that the nullity of one portion draws with it the nullity of the whole. Acceptance we do not think was required by the Spanish law, to give the donation *mortis causa* effect. In donations *inter vivos*, it was only required to deprive the donor of the power of revocation where delivery did not follow the gift. See the case of *Pierce* vs. *Gray et al.* 5 *Mar.* 367, and *note of Gregoria Lopez to the 4th law of the 4th title of the 5 Partida.* And *Siguenza, lib.* 1, *cap.* 25, *no.* 4.

*It is only in acts which cannot subsist but by the validity of all their parts that the nullity of one portion draws with it the nullity of the whole.*

We have next to examine whether this donation could be revoked, and if our inquiry should lead us to the conclusion that it could, whether in fact it was revoked.

By the Spanish law as by that of all other countries with which we are acquainted, donations *mortis causa* were subject to any change which the will of the donor might direct up to the time of his decease. The law of that country, however, presented an exception to the general rule in case the instrument contained a clause in a particular form. That form it is unnecessary to set out. It is sufficient to state that it required the donor to declare that for no cause whatever should the donation be annulled, and that it was to have the same force and effect as a donation *inter vivos*. The oath of the party was also necessary to make it binding on him. We are of opinion that the clause found in the act produced in this case, by which the donors made their power of revocation depend on the will of each other, did not take the case out of the general rule, and was not a compliance with the law which required a renunciation of a totally different kind. In coming to this conclusion, we have not taken into consideration the absence of the oath which the Spanish law required to make the contract binding. See *Siguenza, lib.* 1, *cap.* 25, *no.* 1—3. *Febrero, p.* 1, *cap.* 5, § 2, *no.* 42.

The next and last inquiry is, was the donation in fact revoked? As to the father, the case is quite clear; he died without making any change in it. His wife, the other donor, before her decease made her last will and testament by which she made dispositions of her property different with and contrary to those contained in the act of donation. This instrument was set aside at the suit of the heirs of the wife, as wanting in some of the formalities required by law to give effect to dispositions of property by an act *mortis causa*. But it is contended that though not good as a last will and testament, it is valid as a revocation. To this it is answered that had the instrument contained an express revocation, the doctrine contended for might be true, but that it is incorrect, when the change of will is implied from a testamentary

*But though an act of adoption be invalid as such, yet the donation contained in it by making the child the universal heir of the donors to their property after death, gives the donee capacity to receive independent of the adoption.*

disposition which failed in its effect, the presumption of law being that the testator only intended the donation should be revoked in case the provisions in the will could have their effect.    Febrero states that three witnesses are sufficient to prove the change of intention, because the donation is revoked by the mere fact of the donor having repented of his former act.    This question, however, is treated of by Toullier at great length and with his accustomed learning and ability.    In opposition to Merlin he concludes, and in that conclusion we agree with him, that dispositions in a last will and testament, invalid as such, which are irreconcilable with and contrary to a previous donation, equally mark a change of intention in the donor as an express revocation and do revoke it.    *Febrero, p.* 1, *cap.* 5, § 2, *no.* 41.    *Toullier, lib.* 3, *tit.* 2, *cap.* 5, *nos.* 625—36.

It was attempted to show that the donation was made on certain conditions, and that the donee had performed them. The evidence in our opinion leaves this fact quite doubtful, and the plaintiff having the affirmative and failing to establish it, can derive no benefit from this clause in the act.

The donation made by the husband and wife to the plaintiff, having revoked the clause in the marriage contract by which the survivor was to have the whole of the property at the death of one of them, it follows, from the opinion just expressed, that the donee of the husband by whom the donation was not revoked, must receive one half of the estate, and the heirs of the wife the other half.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the District Court be annulled, avoided, and reversed; and it is further ordered, adjudged, and decreed, that the plaintiff is entitled to one half of the estate real and personal, of which Magdelaine Masse died possessed, and the defendants in this cause to the other half; and it is further ordered, adjudged, and decreed, that this cause be remanded to the District Court, in order that a partition be made of

WESTERN DIS.
*Sept.* 1832.

FUSILIER
*vs.*
MASSE ET AL.

An acceptance is not required by the Spanish laws to give effect to a donation *mortis causa.* And in donations *inter vivos*, it was only required to deprive the donor of the power of revocation when delivery did not accompany the gift.

Subsequent changes of disposition of property in a will which is invalid, show a sufficient intention of a change of mind as to revoke a former donation.

WESTERN DIS. said estate pursuant to this decree; the appellees paying costs
Sept. 1832. in both courts.

SINGLETON
vs.
SMITH.          *Simon* and *Brownson,* for the plaintiff.

*Bowen,* for the defendants.