ST. PAUL, Justice.
 

 Miss Susan Sullivan died January 17, 1931, leaving as her heirs certain nephews and nieces and grandnephews and grandnieces; and one of the nephews, W. P. Sullivan, was appointed administrator of the succession.
 

 Mrs. Belle Friedman, one of the grandnieces, produced three documents purporting to be wills executed by the deceased, and asks that they be probated, the one or the other, according to the latest date.
 

 Two of the documents are exact duplicate originals. They were both dated December 2, 1922, and were in nuncupative form by private act. The other was in the olographic form, and dated October 29, 1897.
 

 In all three documents the proponent was named universal legatee.
 

 The probate was opposed by the administrator on the ground that the documents were forgeries, and that they were not in the proper form for wills. ’ 1
 

 I.
 

 We are not impressed with the claim that the documents are forgeries. The proponent testified to the genuineness of the sig
 
 *233
 
 nature of the testatrix to all three documents. She saw the testatrix and the witness sign the two documents in nuncupative form, and recognized the signature of the .testatrix, with whom she had lived all her life, to the document in olographic form. One of the duplicate original documents in the nuncupative form had been given personally by the testatrix to a sister of proponent, for safekeeping and as a precaution against fire, several years before her death. The other duplicate original was kept by the testatrix in her trunk at her home, together with the document in the olographic form, and both had been repeatedly shown by the testatrix to the proponent. The signature of the witnesses to the document in the nuncupative form, three in number and now all dead, were recognized as genuine by their sons.
 

 The only counter evidence is the testimony of the opponent, that the signature of his aunt is a forgery, and that of an expert witness who, with but a single standard before him in each case, declares that all the signatures to all the documents are forgeries.
 

 With the documents before us for comparison and the ruling of the district judge.to guide us, we think the evidence shows that the documents are all genuine, and not forgeries.
 

 II.
 

 We think the trial judge erred in probating as a will the document in nuncupative form. The Civil Code, article 1581, requires that a nuncupative will under private act must be attested by at least five witnesses, and the document probated has but three. It is true that article 1583 permits a nuncupative will by private act made in the country to be passed in the presence of -only three witnesses if a greater number of witnesses cannot be had; but this exception is intended only for cases of emergency where the testator is in serious danger of death and the making of the will cannot be delayed for the purpose of seeking other witnesses without risking the chance of the would-be testator dying intestate, notwithstanding his desire to make a will. Norton v. Comstock, 151 La. 859, 92 So. 363, citing Fruge v. La Case, 1 Mart. (N. S.) 488; Baillio v. Innis’ Executors, 12 La. 483; Falkner v. Friend, 1 Rob. 48; Ratliff, Tutrix, v. Ratliff, Executor, 7 La. Ann. 117; Verdun’s Heirs v. Verdun’s Executors & Legatees, 15 La. 28; Fuqua v. Dawson, 22 La. Ann. 82; Maria v. Edwards, Executor, 1 Rob. 359; Kilbourn v. Pennebaker, 23 La. Ann. 700.
 

 In the case before us there was no emergency ; the testatrix was not seriously ill at the time, and in fact lived many years after-wards. She had had the will formally writ-1 ten out beforehand, with only the date and signature needed to complete it; and moreover there were several' other persons present at the time in and around the house where the will was made, or nearby the premises and available as witnesses, had the testatrix chosen to call them as such. The conclusion is irresistible that the testatrix did not know that five witnesses were required for her will, and therefore called only three witnesses, thinking that these would suffice. ,
 

 The probate of the document dated December 2, 1922, purporting to be the last will of the deceased in nuncupative form by private act,, must therefore be set aside.
 

 
 *235
 
 III.
 

 The olographic document offered for probate reads as follows:
 

 “Oct. 29, 1897.
 

 “I Susan Sullivan agree with consent of parents to adopt this child, third child and girl (Jessie Belle Yanghan), of W. H. and Eva Vanghan, to give schooling board and clothing having control of child until grown. To live with me a lone maid
 
 to inherit at my death every thing undisturbed as I leave it to a child of blood,
 
 cattle horses hog chickens money land household goods and every earthly thing I possess. Signed by me and father and mother of child and witnesses. (Italics ours.)
 

 “[Sgd.] Susan Sullivan
 

 “[Sgd.] Eva L. Yanghan, W. H. Vanghan
 

 “[Sgd.] Joe Shanks, O. S. Flynn.”
 

 This. document, intended primarily for an act of adoption, was executed when the 'child, Jessie Belle Vanghan (now Mrs. Belle Friedman, the proponent), was about two years of age, and was lived up to by the parties according to its intent from the time it was executed up until the time of Miss Sullivan’s death.
 

 But as an act of adoption it availed nothing because it was not passed before a notary public. Act No. 31 of 1872, p. 79.
 

 But though an act of adoption be invalid, as such, yet the donation contained in it, by making the child the universal heir of the donors to their property after death, gives the donee capacity to receive, independent of the adoption. Fuselier v. Masse et al., 4 La. 423.
 

 In this case the language of the alleged olographic document clearly institutes the proponent as universal legatee of the deceased, and any language is sufficient for that purpose if it clearly purports to be a gift mortis causa. Pena v. Cities of New Orleans & Baltimore, 13 La. Ann. 86, 71 Am. Dec. 506: Succ. of Ehrenberg, 21 La. Ann. 280, 99 Am. Dec. 729.
 

 IV»
 

 But the evidence in this record does not suffice to show the alleged olographic document to be entirely written, dated, and signed by the testatrix. The proponent alone so testified; no other witness was produced who was familiar with the handwriting of the testatrix and who declared that he recognized the testament as being entirely written, dated, and signed by her. Rev. Civ. Code, art. 1655, amended by Act No. 119 of 1896, p. 168. But the testimony of two such witnesses to that effect is essential to the probate of an olographic will, and other testimony is admissible only to corroborate or contradict the testimony thus given. Succ. of Roth, 31 La. Ann. 315.
 

 Y.
 

 The proponent has answered the appeal praying that if the probate of the nuncupative document by private act, dated December 2, 1922, be set aside, then that the alleged olographic will of October 29, 1897, be admitted to probate; or, in the alternative, if the proof in the record is insufficient for that purpose, then' that the case be remanded for the purpose of receiving legal and proper proof sufficient to warrant its admission to probate.
 

 As we have said, the evidence in the record is not sufficient to order the probate of the
 
 *237
 
 said" alleged olographic will; hut we think that the appellee is entitled to a remand as prayed for.
 

 Decree.
 

 For the reasons assigned, the judgment appealed from is reversed and the decree of the lower court probating, as the will of the deceased, the document in nuncupative form by private act, dated December 2, 1922, is annulled, avoided, and set aside. It is further ordered that the case be remanded to the court below, with leave to the proponent to produce, if she can, legal and proper proof sufficient to warrant the probate of the alleged olographic will dated October 29, 1897. It is further ordered that the costs of this appeal be paid by the appellee, and that all other costs abide the final result.
 

 O’NIELL, Q. J., being absent during the argument, takes no part.