ODOM, Justice.
 

 This ease was before us once before. The issues involved were set out in detail in the opinion handed down on October 30, 1933. See Succession of Sullivan, 178 La. 230, 151 So. 190, 191. In that case we said:
 

 “But the evidence in this record does not suffice to show the alleged olographic document to be entirely written, dated, and signed by the testatrix. The proponent alone so testified; no other witness was produced who was familiar with the handwriting of the testatrix and who declared that he recognized the testament as being entirely written, dated, and signed by her.”
 

 Under Civil Code, art. 1655, as amended by Act No. 119 of 1896, the olographic testament “must be acknowledged and proved by the declaration of two credible persons, who must attest that they recognize the testament as being entirely written, dated and signed in the testator’s handwriting.”
 

 We remanded the ease to give the beneficiary under the purported will an opportunity to produce, if she could, two or more witnesses who could attest that they recognized the testament as having been entirely written, dated, and signed by the testatrix. On the retrial, Mrs. Friedman, the proponent, produced four witnesses, including herself, whose testimony met the requirements of the Code. Mrs. Friedman testified that she was reared by the testatrix and had lived in the house with her practically all her life; that she had often seen her write and sign her name
 
 *710
 
 and was for that reason familiar with her handwriting. Her husband, E. A. Friedman, testified that he had lived in the house with the deceased practically all the time since he and his wife were married on June 30,' 1918; that during a considerable portion of the •time he had attended to the business of the deceased, had often seen her write and sign her name, and was familiar with her handwriting and signature. Mrs. W. C. Bourke, Mrs. Friedman’s sister, said she was reared by deceased and lived in the house with her until she was married at the age of eighteen; had seen her aunt Miss Sullivan, the testatrix, write notes, letters, and checks and sign her name. W. O. Bourke, her husband, testified that he had seen deceased write and sign her name so that he was familiar with her handwriting and signature.' Each of these four witnesses testified that the document dated October 29,1897, purporting to be the last will and testament of Miss Sullivan, was entirely written, dated, and signed by her.
 

 Against this, there is the testimony of four witnesses, Mr. W. P. Sullivan, a nephew of deceased, who qualified as administrator, and who is opposing the will, Mr. Francis Julian and Mr. John B. Heroman, bankers, and Prof. L. C. Spencer, the three last named being called as experts. Mr. Sullivan testified that he was acquainted with the handwriting of the deceased and was of the opinion that the document in question was not written, dated, and signed by her.
 

 The bankers, who had acted as cashiers of their respective banks for many years, had before them the admittedly genuine signature of the deceased attached to a document having 1878 as its date, which was nineteen years before the purported will was signed. They were of the opinion that the signature to the will was a forgery. They said that if they had in the bank the signature of 1878 as a specimen, they would not cash a check bearing such signature as the one attached to the will.
 

 Prof. Spencer is a handwriting expert of recognized ability. He is frequently called to testify in cases of this kind. He had before him numerous documents, such as cheeks, receipts, and deeds signed or purporting to have been signed by the testatrix, and said he had studied the case for months and was of the opinion that the signature to the will was a forgery, but declined to say whether the will itself was written by the same party who wrote the signature. That seems rather strange in view of his statement that he had given the case such careful consideration.
 

 Mrs. Friedman presented three documents purporting to be wills executed by the testatrix, the one now under consideration in olographic form - and two which are duplicate originals dated December 2, 1922. The last mentioned are nuncupative in form by private act. They have attached to them what purports to be the genuine signature of the testatrix and are attested by three witnesses, all now deceased. Mrs. Friedman testified that she saw the testatrix and the three witnesses sign the documents in nuncupative form and the sons of the three deceased witnesses testified that they recognized the signatures of their fathers as true and genuine. Mrs. W. O. Cowley, a sister of Mrs. Friedman, who now lives in California, and who seems to be a very intelligent woman, testi
 
 *712
 
 fied under commission that she visited the testatrix, who was her great aunt, in September, 1929, and that during that visit her aunt handed her one of the duplicate original documents in nuncupative form with instructions that she keep it in a safe place. She says her aunt told her that the document was her last will and testament; that she at one time had lost her home and its contents by fire and was afraid that if she kept this document it might be destroyed. Mrs. Cowley kept the document until after the death of Miss Sullivan, when she sent it by mail to one of plaintiff’s attorneys.
 

 We see no reason therefore to doubt that the document which was handed by Miss Sullivan to Mrs. Cowley was signed by the testatrix. Miss Sullivan could write, so that there was no reason why, if she wanted to make a will, she should get some one else to attach her signature. But Prof. Spencer says that the signature to this document, as well as that to the duplicate thereof which the testatrix kept at home in her trunk, and the signature to the olographic will were all forgeries, and was emphatic in his statement that the same person forged each of them. If Prof. Spencer is correct in saying that the signature to each of the documents was written by the same person, it follows that if one of them is genuine the others are. We think there is no escape from the conclusion that the document which Miss Sullivan delivered to Mrs. Cowley had attached to it Miss Sullivan’s genuine signature. We must hold, therefore, that the olographic will was signed by her.
 

 We mention, however, another circumstance which we think is convincing on this point. The document in olographic form is dated October 29, 1897. It reads as follows:
 

 “I Susan Sullivan agree with consent of parents to adopt this child, third child and girl (Jessie Belle Vaughan), of W. H. and Eva Vaughan, to give schooling board and clothing having control of child until grown. To live with me to inherit at my death every thing undisturbed as I leave it to a child of blood, cattle horses hog chickens money land household goods, and every earthly thing I possess. Signed by me and father and mother of child and witnesses.
 

 “[Sgd.] Susan Sullivan
 

 “[Sgd.] Eva L. Vaughan, W. H. Vaughan
 

 “[Sgd.] Joe Shanks, O. S. Elynn.”
 

 This instrument, the original of which is before us, has the appearance of an ancient document. It is written with pencil on note paper somewhat yellowed and faded, apparently from age. It was kept by Miss Sullivan in her trunk, from which it was taken by Mrs. Eriedman, the proponent, and by her delivered to her attorneys, who produced it in court. It purports to have been signed by Miss .Sullivan, the father and mother of the child (Jessie Belle Vaughan, now Mrs. Friedman), and two witnesses. If it was written on the date it bears, it could not have been forged by Mrs. Eriedman, as she was then only two years old. But, say counsel, it could have been, and it seems to be their contention that it was, written long after the date it bears, either .by Mrs. Friedman or some one interested in seeing that she succeeded to the property rights of Miss Sullivan.
 

 In view of the general surroundings and circumstances and considering the condition of the document itself, we discard this viev^
 
 *714
 
 because not sanctioned by reason. Manifestly, the document was not intended primarily as a last will and testament, but as an act of adoption. As such, it failed because not clothed with legal formalities. But we held in our former opinion (178 La. 230, 151 So. 190) that inasmuch as it by its terms clearly showed that Miss Sullivan intended to make the child Jessie Belle Yaughan her sole heir, it would, if proved, suffice as a last wilL That it was intended as an act of adoption is attested by the undisputed fact (hat Miss Sullivan did precisely what she would have done had it been an act of adoption in legal form; that is, she took the child into her home and reared her as her own. This document is dated October 29,1897, when the child was about two years old. It mentions “this child” and “to give schooling, board and clothing, have control of child until grown.” The record abundantly shows that Miss Sullivan took the child when an infant, or about the time this document purports to hav.e been written, and the document in terms evidences the intent which was carried out in every detail according to all of the witnesses, from which it is reasonable to assume that the document was prepared and signed on or about the date it bears.
 

 Another reason for discarding the theory that this document was forged is that if Mrs. Friedman or another acting in her behalf had intended to defraud the other heirs of Miss Sullivan of their rights, it is not at all likely that such an instrument as this would have been written to accomplish that purpose. The natural and reasonable thing to do would have been to make an instrument in the form of a last will and this one is not in such form. Again, Mrs. Friedman knew of the existence of the nuncupative will by private act dated in 1922, which was perfect in all respects except that it was attested by only three witnesses, when five are required by article 1581 of the Civil Code. By that instrument Miss Sullivan v constituted Mrs. Friedman her sole legatee. Mrs. Friedman knew its contents for she had seen and read it. She was evidently not aware of its invalidity, or she would not have presented it to her attorneys for probate. Knowing of the existence of this will in nuncupative form, it is not likely that Mrs. Friedman would have thought it necessary to write one in olographic form making a like disposition of the property. And if it be suggested that she wrote the olographic instrument prior to 1922, the date on which the nuncupative will was prepared, it is hard to understand why she could have thought it necessary to forge the nuncupative will, as Prof. Spencer and other experts say she or some other person did.
 

 The trial judge was satisfied that the document in olographic form was entirely written, dated, and signed by the testatrix, and rendered judgment accordingly. We think he made no misake. The judgment appealed from is affirmed.