## No. 633.

### J. BUNTIN ET AL. VS. E. M. JOHNSON.

The will in controversy was in the possession of the testatrix. She requested one of the witnesses to read it, which he did in her presence and in the presence of the subscribing witnesses. She declared after the reading that it was her will, and she signed it. The will is valid.

It can not be seen how the testatrix could better have "*presented*" the will to the witnesses. Indeed, she could only have done it in one other way. to wit: by taking it up in her hand, giving it to one of the witnesses, declaring at the time in terms: "This is my last will."

APPEAL from the Fourteenth Judicial District Court, parish of Morehouse. *Ray*, J. *Todd & Brigham*, for plaintiffs and appellants. *Newton & Hall*, for defendant and appellee.

MORGAN, J. Plaintiffs, alleging themselves to be the heirs at law of Mrs. Rebecca Moore, deceased, institute this proceeding for the purpose of annulling the will made by her, by which she bequeathed her property to the defendant, her husband. The grounds of nullity relied on are, that the will was written out of the presence of the testatrix; that it was not presented by her to the witnesses with the declarations required by the second clause of article 1581, C. C.; that it was not read by the testatrix to the witnesses, nor by one of the witnesses to the others in her presence.

"A nuncupative testament, under private signature, must be written by the testator himself, or by any other person from his dictation, or even by one of the witnesses, in presence of five witnesses residing in the place where the will is received, or by seven witnesses residing out of the place. Or it will suffice if, in the presence of the same number of witnesses, the testator presents the paper in which he has written his testament, or caused it to be written out of their presence, declaring to them

that that paper contains his last will. In either case "the testament must be read by the testator to the witnesses, or by one of the witnesses to the rest in the presence of the testator. It must be signed by the testator, if he knows how or is able to sign, and by the witnesses, or at least by two of them, in case the others know not how to sign, and those of the witnesses who do not know how to sign must affix their marks." C. C. 1582.

It is not necessary that we should determine whether the testimony of Hall, which was introduced for the purpose of establishing the fact that the will in question was written by Daniel Newton at the dictation of the testatrix, is sufficient. The case, in our opinion, is to be governed by the second clause in the article of the Code above quoted (1582), commencing " or it will suffice if, in the presence of the same number of witnesses," etc. And the question is, was the will which is now attacked presented to the required number of witnesses; was it declared to them that the paper contained the testatrix's last will; was it read in the presence of the testatrix; was it signed by her and by the witnesses?

The evidence, we think, discloses the fact that, when the subscribing witnesses were all present, one of them read the will aloud to the testatrix, who declared that it was her will, whereupon she signed it, making her mark, she not knowing how to write her name. The witnesses then signed in her presence; the number of witnesses was sufficient. It is conceded that the will was written out of the presence of the witnesses, and it is therefore contended that it should have been presented to them by the testatrix, who should have declared, at the time of presentation, that it was her last will, and that this not appearing to have been done, the will is null.

The case principally relied upon by them in support of their position, and which is certainly the strongest in their favor, is McCaleb vs. Douglass, 16 An. 327. In that case the will was read by one of the witnesses in the presence of the others to the testator, who declared that it was his will. Indeed, he seems to have assented to it sentence by sentence. It was not, however, formally " presented " by the testator to the witnesses, and as it was written out of their presence the court decided that the want of presentation was fatal. But in that case it appeared that the testator did not dictate the will to the witness, or party, who drew it up. The facts in that case were, as we gather from the testimony, which is copied at large in the opinion, that Douglass was lying in a dying condition in a room near to which the will was written. No one was present in the room where the will was being written except Dorsey and Bland. When Dorsey was about to commence the will he requested Bland to step into Douglass's room and ask him something about the legacies, and if he did not want to give something to his other relatives. Bland

did so, and named most of Douglass's other relatives to him, to which Douglass answered "well," and when asked by Bland how much they were to be given he replied "you say." With this answer Bland returned to the room where Dorsey was writing, and had the will written according to his idea as to what Douglass ought to do. The testimony shows that it was Bland who dictated what disposition was to be made of the property. It was Bland devising Douglass's estate. When the will was taken to Douglass, and the reading thereof was finished, he assented to what had been done, took a pen which was placed in his hand, scratched his name upon the paper, and went into a deranged state of mind which continued till his death.

This will was, therefore, never dictated by the testator, and could in no sense be considered as having been presented by him to the witnesses. But in the case before us the facts are very different. The will was in her possession. She requested one of the witnesses to read it, which he did in her presence and in the presence of the subscribing witnesses. She declared, after the reading, that it was her will, and she signed it. We do not see how she could better have " presented " the will to the witnesses. Indeed, she could only have done it in one other way, viz.: by taking it up in her hand, giving it to one of the witnesses, declaring at the time in terms " This is my last will."

In the case of Bouthemy vs. Dreux et al., 12 M. 639, Judge Porter said: " In the case before us it has been found that the will was written by the direction of the testator, that it was read over to him, and that it was signed by him; but it is objected he did not *present* the testament to the witnesses and *declare* it to be his. We do not understand the law to be that these words are so material and of such solemnity that they can not be supplied by others expressing the same ideas. Directing an instrument to be read over to witnesses, accompanied with the testator's assertion that it was his last will and testament (as is in evidence, was done here), we think the same thing as if he had *declared* it to be his. We are also of opinion the will was *presented*. This word, in the sense in which it is used in the law, means to exhibit to view or notice, and is fully satisfied by the testator's requesting his will to be read over to the witnesses and telling them it was his. We are unable to find any force in the argument that the instrument should be delivered by the testator, with his own hand, to the witnesses, a ceremony which would often deprive the citizen of the power of making a will at all, as the instances are frequent where bodily weakness would render it impossible to do so, though the mind was sound and healthy. The object of the Legislature was that the act should be transmitted from the testator to the witnesses, in their presence, in such a way as to make it evident that it emanated from him. The court of cassation in France has held, in constru-

ing a law on the same subject, expressed in the same words as ours, that
the presentation need not ·be manual; that the object of the law was to·
guard against a false testament being substituted in place of the real
one, and that object was accomplished when the testator either presented
it with his hands or indicated it by gestures or signs." Seay 14, 458,.
18 *ib.* 210.

It is true that the case just quoted was relied upon in the case of Mc-
Caleb vs. Douglass, and that the court there said, "without inquiring·
how far that case may now be cónsidered as authority," thus implying a
doubt as to the correctness of the decision; but we have seen no case
where the authority has been overruled or disregarded, and we think it
was correctly decided, and that the reasons given in support of the de-
cision are impregnable. It is also to be observed that in the case of
McCaleb the court said the circumstances of the case of Bouthemy dif-
fered materially from the facts in McCaleb's case. In the case before us
the facts are, as nearly as possible, identical with those in the case of
Bouthemy.

This was the view taken of the case by the district judge, and we think
his judgment should be affirmed.

Judgment affirmed.