McCALEB, Justice.
 

 J. R. Bush, a resident of Caddo Parish, died on April 7th 1952. He was survived by collateral relatives only — a brother and two sisters, who are opposing the probate of his last will and testament in which he left the bulk of his estate to the overseer of his plantation, Mr. Sherman Dake, and appointed him as testamentáry executor. On April 12th 1952, Dake presented the will, which was executed on February 23, 1952 in nuncupative form by private act, for probate and prayed that he be confirmed as testamentary executor of the estate.
 
 [1]
 
 His application was opposed, as aforesaid, by the two sisters and brother of the testator, who were given legacies of $1000 each under the testament. This attack was based on the grounds that the will was not executed in compliance with the formalities of law prescribed for a nuncupative will by private act in that it was not read either by the testator to the witness or by one of the witnesses to the rest; that C. B. Prothro, the testator’s attorney who read the will, was an incompetent witness thereto; that the will was not presented to the witnesses by the testator and that it was not signed by all of the witnesses in the presence of each other.
 

 After hearing evidence respecting the confection and execution of the will and particularly on the issues raised in the opposition of the sisters and brother, the trial judge dismissed the opposition and admitted the will for probate. The opponents have appealed.
 

 An examination of the record reveals the following facts. At the time of the writing of the will, J. R. Bush was confined to the Highland Sanitarium in Shreveport, having suffered a paralytic stroke. During February of 1952, he summoned his attorney, Mr. C. B. Prothro of Shreveport, and informed him that he was desirious of making a new will.
 
 [2]
 
 The will was not prepared at that time but a few days later, on February 23rd, Mr. Prothro repaired to the hospital and wrote the will in question in the presence of the testator and in accordance with his instructions. When the preparation of the instrument was completed, Mr. Prothro secured three nurses and a hospital visitor (a trolley driver named Allen), to serve as witnesses to
 
 *1013
 
 getlier with the testator’s personal attendant, a negro named Jackson Cass, Jr., and himself. When the witnesses were assembled in the room, Mr. Prothro read the will in their presence and in the presence of the testator and then asked the latter if that was his last will and testament. After stating that- the paper contained his last will, the testator; his right arm being paralized, made his mark with the' assistance of Mr. Prothro who then placed the will on the dresser where it was signed by all of the witnesses.
 

 The will, when filed in court, consisted of two unattached sheets of tablet paper. The principal dispositive clauses are set forth on the first page and the appointment of the executor, the attorney to probate the will, recitation of various formalities, dating and signing by the testator and the witnesses are on the second page. The first page does not contain any identifying marks of the testator or the witnesses.
 

 Mr. Prothro testified that, at he time the will was written and when it was signed by the witnesses, the tops of the two pages were sealed with mucilage that he had taken off of an envelope in his possession and spread on the paper with his fingers. Some of the witnesses avouch that they were under the impression that the two pages were “clipped” together and the will itself bears evidence of a mucilage smear at the top of the second page and on the back of the first page. However, when offered for probate, the pages of the will were separated.
 

 In this court, counsel for appellants are contending that the judgment below is erroneous for the following reasons:
 

 1. That the proponent failed to carry the burden of establishing by a preponderance of evidence that the will offered for probate is the same document which was executed by the testator;
 

 2. That the will was not executed in compliance with the formalities prescribed by Articles 1581 and 1582 of the [LSA-] Civil Code;
 

 3. That it was not signed by all of the witnesses in the presence of each other and was not read by one of the witnesses, as required by law, and
 

 4. That the attorney designated to probate a will is disqualified from acting as a witness thereto for the reason that he is a legatee.
 

 We will discuss these -propositions in their respective order.
 

 At the outset, we of course recognize it to be well-settled that, where the probate of a will is opposed ab initio, the party offering it has the burden of establishing its genuineness by a preponderance of evidence. Succession of Wadsworth, 152 La. 131, 92 So. 760. In the instant case, the proponent has carried the burden — for, after a careful perusal of the evidence we are fully satisfied, as was the trial judge, that, the will is that of Mr. Bush and that its validity-has been proved beyond peradventure.
 

 
 *1015
 
 Counsel’s argument to the contrary, to which they devote much space in their prolix brief, is predicated in the main on an attack upon the testimony given by Mr. Prothro which they say is unworthy of belief and they suggest the possibility that the first page of the will has been substituted (evidently by Mr. Prothro, inasmuch as he admittedly had possession of the instrument from the date of its confection until it was filed in these proceedings). In lesser degree, counsel rely upon evidence of one of the witnesses to the will, Cass, the negro attendant of Mr. Bush, who, unlike all of the other witnesses to the testament, stated that the testator left his oil wells in Caddo Parish to his four nephews, whereas they are bequeathed in the will to Mr. Dake.
 

 But these postulations overlook, for the most part, the testimony of the other four disinterested witnesses, who substantially support the evidence of Mr. Prothro respecting the confection and execution of the will in accordance with law. Although these witnesses did not actually read the various dispositions made by the testator, which were inscribed on the first page of the will, they heard the testament read by Mr. Prothro and at least two of them were able to recollect the principal dispositions, i.e., the gift of all real estate and $10,000 to Sherman Dake and the legacies of $1000 each to the opponents herein, and they testified that those bequests conform to the testament offered for probate.
 

 The discordant evidence of the negro attendant, Cass, that Mr. Bush left his oil wells in Caddo Parish to his nephews, strikes us as being merely the impression of the witness, gathered perhaps from a statement that Mr. Bush might have made to him sometime in the past. At any rate,
 
 %
 
 his evidence on this score is fully overcome by the recitals of the will and the testimony of Mr. Prothro and two of the nurses. The judge of the district court resolved accordingly and we think his ruling was correct.
 

 A word with respect to the testimony of Mr. Prothro, which is the object of a scathing attack by counsel for opponents. It is said by counsel that Mr. Prothro’s evidence is so conflicting and contradictory as to render it unworthy of belief and it is even covertly suggested that he must have altered the will by substituting a new first page containing dispositions different from those of the testator.
 

 We think that the charges of counsel, which necessarily label Mr. Prothro a perjurer, are without solid foundation. Indeed, a careful reading of Mr. Prothro’s testimony has served only to impress us with his sincerity and credibility. It is true, as claimed by counsel and as recognized by the district judge, that there are errors in his statement on the witness stand respecting whether the will was first written on one or two pages of paper or whether certain mistakes had been made in the second will of Mr. Bush and with reference to other details. However, the trial judge
 
 *1017
 
 found that, despite these errors and contradictory statements, Mr. Prothro’s testimony was not impeached. We are in accord with the judge and think it proper to observe that the contradictions upon which counsel premise their attack are, in our opinion, of a minor nature and simply exhibit a faulty recollection on the part of the witness as to details. They do not destroy the truthfulness of his statement as to the confection and execution of the will by the testator and offer no basis for support of the claim that this witness, a lawyer of the Shreveport Bar in good standing, who represented the testator for over thirty years and who had prepared two other wills in which Sherman Dake had been named as the principal legatee, may have altered the testament offered for probate by substituting a page therein so as to benefit Dake.
 

 The next point advanced by counsel is that the will was not executed in compliance with Articles 1581 and 1582 of the LSA-Civil Code. These Articles read as follows:
 

 “Art. 1581. A nuncupative testament, under private signature, must be written by the testator himself, or by any other person from his dictation, or even by one of the witnesses, in presence of five witnesses residing in the place where the will is received, or of seven witnesses residing out of that place.
 

 “Or it will suffice, if, in the presence of the same number of witnesses, the testator presents the paper on which he has written his testament or caused it to be written out of their presence, declaring to them that that paper contains his last will.”
 

 “Art. 1582. In either case, the testament must be read by the testator to the witnesses, or by one of the witnesses to the rest, in presence of the testator; it must be signed by the testator, if he knows how or is able to sign, and by the witnesses or at least by' two of them, in case the others know not how to sign, and those of the witnesses who do not know how to sign, must affix their mark.
 

 “This testament is subject to no other formality than those prescribed by this and the preceding article.”
 

 It is contended that the will is null because it was not manually presented by the testator to the witnesses so that they would be able to identify it at the time of probate.
 
 [3]
 

 We find no merit in the contention. It has been the jurisprudence of this court since 1823, when the case of Bouthemy
 
 *1019
 
 v. Dreux, 12 Mart., O.S., 639 was decided, that it is not necessary for the testator to manually present a nuncupative will by private act to the witnesses. There, the court said:
 

 “We are also of the opinion the will was presented. This word, in the sense in which it is used in the law, means, to exhibit to view, or notice, and is fully satisfied by the testator’s requesting his will to be read over to the witnesses, and telling them it was his.”
 

 That authority has been followed throughout the years by a long line of jurisprudence. See Buntin v. Johnson, 28 La. Ann. 796; Wood v. Roane, 35 La.Ann. 865; Bourke v. Wilson, 38 La.Ann. 320; Pearr & Kullman v. Belmont, 39 La.Ann. 294, 1 So. 681; Succession of Reems, 115 La. 102, 38 So. 930; Ducasse’s Heirs v. Ducasse, 120 La. 731, 45 So. 565 and Succession of Guidry, 135 La. 314, 65 So. 319.
 

 In the case at bar, the will was read by Mr. Prothro in the presence of the witnesses and the testator. Immediately thereafter, the testator was asked if that was his last will and testament. He replied that it was and then signed the will by affixing his mark with the assistance of Mr. Prothro. This was a sufficient presentation and declaration on the part of the testator.
 
 [4]
 

 Counsel furthér insist that, if it be held that a manual presentation of the will was unnecessary, then it was imperative that, in addition to the reading of the will by Mr. Prothro in the presence of the testator and the other witnesses, the testator reread the will to the witnesses after declaring that it was his will.
 

 This contention has no weight for the reason that the law does not require the rereading of the will by the testator. The second paragraph of Article 1581, which is applicable to this case, provides that it suffices for the testator to present the will to the witnesses declaring to them that it is his last will. Compliance is made with this provision, under the jurisprudence .cited above, when the testator declares to the witnesses that the instrument is his last will after its contents have been read, either by the testator to the witnesses or by one of the witnesses to the rest in the presence of the testator, all in conform
 
 *1021
 
 ity with Article 1582. A second reading of the will is neither provided for nor envisioned.
 

 Counsel also assert that the will is invalid because the witnesses did not affix their names in the presence of each other. Although there is no specific provision of the Civil Code obligating the witnesses to sign in the presence of each other, it has been stated by dicta that this is a necessary formality. See Crane v. Marshal, 1 Mart., N.S., 577 and Succession of Seals, 174 La. 275, 140 So. 476.
 

 In the case at bar, the question is not important because the preponderating evidence establishes that the witnesses signed in the presence of each other. The contrary contention of counsel for opponents is founded on the inability of two of the three nurses, who witnessed the will, to recall whether Mr. Prothro signed in their presence. But Mr. Prothro testifies positively that he signed in the presence of all of the other witnesses and he is corroborated in his statement by Allen, the trolley driver, and the negro, Cass, who testified favorably to the opponents with respect to other matters which we have hereinabove discussed.
 

 Lastly, it is professed that the will is invalid because it was not read by one of the witnesses thereto. Counsel say that Mr. Prothro was disqualified' from acting as a witness to the will because he was named therein as the attorney to probate it. It is asserted that this designation constituted a remunerative donation and that Mr. Prothro, being a legatee, was incompetent under Article 1592 of the LSA-Civil Code.
 

 The argument is without substantial basis and is fully answered by the decision of this court in Succession of Feitel, 187 La. 596, 175 So. 72, 82, wherein it was held that:
 

 “ * * * The appointment of an attorney, by a testator, to attend to the probate of the will, or to the settlement of the succession, is more analogous to the appointment of a testamentary executor, than it is to the giving of a legacy. In Davenport v. Davenport, 116 La. 1009, 41 So. 240, 114 Am.St.Rep. 575, it is held that the appointment of one of the subscribing witnesses as testamentary executor, in a nuncupative will by public act, was valid, notwithstanding Article 1592 of the [LSA-] Civil Code declares that a legatee is not a competent witness to the will in which he is named as a legatee.”
 

 The judgment appealed from is áffirmed.
 

 LE BLANC, J., absent.
 

 [1]
 

 . Sherman Dake died prior to the decision below. On July 15th 1952, Mrst National Bank of Shreveport was. appointed dative testamentary executor of the succession.
 

 [2]
 

 . Mr. Prothro, who had been Mr. Bush’s attorney for over thirty years, had previously written two other nuncupative wills by private signature for him, one dated December 29th 1950 and another on June 12th 1951. The original will was redrafted after the death of the testator’s wife and, in the second will, Mr. Sherman Dake was named as the principal beneficiary.
 

 [3]
 

 . In order to probate a nuncupative will by private act, three of the attesting witnesses must appear and testify that they recognize the testament and their signatures. Articles 1648 and 1649 of the LSA-Civil 'Code. If all of the attesting witnesses are dead or outside of the State at the time of the probate, then the method of probating a will outlined in Article 1654 can be invoked.
 

 [4]
 

 . Counsel for the opponents proclaim that the doctrine announced in Bouthemy v. Dreux, 12 Mart., O.S., 639, was effectively overruled by certain changes made in the amendment to Article 1582 and that, furthermore, the court, in McCaleb v. Douglass, 16 La.Ann. 327, refused to follow the decision. Whereas the court, in McCaleb v. Douglass, did express its doubt respecting the ruling in Bouthemy v. Dreux, the fact remains that, despite that decision and the asserted changes in the codal article, Bouthemy v. Dreux, as shown above, has been consistently followed by the court in all of the later cases. It is enough to say that we see no good reason to depart from the doctrine of that case as. we consider it to be sound.