481 So.2d 607 (1986)
SUCCESSION OF Ado JENKINS.
No. 85-CC-1368.
Supreme Court of Louisiana.
January 13, 1986.
Concurring Opinion January 28, 1986.
Rehearing Denied February 21, 1986.
Sondra A. Cheek, Breland & Cheek, John N. Gallaspy, Gallaspy & Paduda, Bogalusa, for applicant.
Rykert Toledano, Jr., Covington, for respondent.
WATSON, Justice.

ISSUE
The issue is whether a testator's appointment of an attorney in his will is binding on the heirs.

*608 FACTS
Ado Jenkins' attorney, Louis E. Pauratore, prepared a statutory last will and testament for his client which appointed Pauratore as attorney for the estate and Jenkins' wife as executrix. After Ado Jenkins died, his widow, Carrie Mae Cammatte Jenkins, allegedly failed to cooperate with attorney Pauratore, and he ruled her into court, demanding repayment of court costs advanced, a list of the estate's assets and liabilities and an interim attorney's fee of $2,500. The widow, in a "petition for rule nisi," countered with allegations that: the attorney had been disrespectful; demanded $2,500 as a retainer; refused to surrender Ado Jenkins' last will and testament; instituted probate proceedings without her consent; and, became attorney for the estate on his own inititative, without explanation to her and her husband.
The couple had two children, Dickie Louis Jenkins and Patty Sue Jenkins. Patty Sue Jenkins filed a petition to annul the will for lack of compliance with procedural formalities in its confection. In answer to the petition, her mother and brother admitted the will was invalid. Pauratore then intervened to resist the action to annul the will and the heirs opposed his intervention.
The trial court held that the designation of an attorney in a will is binding on the heirs and the Court of Appeal denied a writ, relying on Rivet v. Battistella, 167 La. 766, 120 So. 289 (1929). On the question of attorney Pauratore's right to intervene in the nullity proceeding, the trial court decided that a designated attorney in a will has a real interest which entitles him to intervene in a suit to annul the will. The Court of Appeal denied a writ on this issue, relying on LSA-C.C.P. art. 1091.[1] This writ then issued to the trial court. 475 So.2d 347 (La.,1985).

LAW
Rivet v. Battistella, 167 La. 766, 120 So. 289 (1929) held that the designation of an attorney in a will is valid and binding on those taking under the will, and Rivet was followed in subsequent cases.[2] Although there is no codal authority for a designated attorney, Rivet relied on C.C. arts. 1519[3] and 1527,[4] which allow conditional donations.
A student comment in 51 Tulane Law Review at 334 (1977) states:
"Louisiana is the only state that enforces the testator's appointment of an attorney to handle his succession and provides a right of action to the designated attorney whose services have been refused by the executor. In other states, this designation is considered the testator's advice or preference and the appointment, like other precatory statements, is not binding."[5] *609 In effect, the designated attorney acts as a "quasi executor".[6] The attorney has a "real interest" in the succession. Succession of Pope, 230 La. 1049 at 1057, 89 So.2d 894 at 897 (1956).
As a general principle, an inter vivos donor can dispose of his property under conditions which are not contrary to law or immoral. LSA-C.C. art. 1527. Except as implied in LSA-C.C. art. 1519, which nullifies impossible, illegal and immoral conditions, there is no express codal authority for conditional donations mortis causa. Generally, testators are free to make conditional donations mortis causa, but there are restrictions on this testamentary power.[7] Donations to doctors and ministers who have attended a person during the last illness are limited. LSA-C.C. art. 1489.[8]
The Louisiana Civil Code authorizes a testator to appoint one or more executors for his estate.[9] "The testamentary executor is bound to see the testament faithfully executed." LSA-C.C. art. 1672.
In the case of a fidei commissum, only the illegal condition is void. Succession of Reilly, 136 La. 347, 67 So. 27 (1914). The balance of the will is valid. Succession of Walters, 261 La. 59, 259 So.2d 12 (1972).[10]

CONCLUSION
It can be inferred that the testamentary executor's duty to see the testament faithfully executed includes the power to engage an attorney for this purpose.[11] Although there is no express prohibtion against appointing an attorney as a quasi executor, that office infringes on the codal authority of the executor.[12]
The same public policy considerations which limit donations to doctors and ministers militate against making an attorney designation a binding condition in a will. An attorney drafting a will has an advantage over the lay person who has entrusted him with the job. Generally, an attorney's suggestion, direct or indirect, that he should be named in a will would be accepted by the trusting client. For the attorney drafting a will to be named as attorney for the succession has at least a *610 suggestion of impropriety. If a person sincerely desires an attorney to handle his estate, that person can be named as executor.[13] This is in accord with the codal scheme.[14] The executor and/or heirs should have the prerogative of accepting a named attorney or selecting another.[15]
Absent some specific legal authorization for an attorney to be named in a will, there is no reason to encourage the practice by making it a binding condition. On the contrary, enforcing such a nomination encourages disputes such as this and interferes with a normal, i.e., selective, attorney-client relationship. Naming an attorney in a will must be regarded as an expression of the testator's desire. Generally, the executor and/or the heirs will have sufficient knowledge to decide whether to accede to that suggestion.
It runs counter to civilian principles for a testator to maintain control of his estate after death. The heirs have immediate seizen of the succession; le mort saisit le vif.[16] The idea of a testator being able to dispose of his property through a series of beneficiaries, substituting one for the other, is reprobated by the civil law.[17]
Thus, designation of an attorney by a testator in a will is merely precatory. It is not binding because: it infringes on the codal authority of the executor; it is not specifically authorized by law; it encourages solicitation and the appearance of impropriety on the part of attorneys; and it is contrary to general civilian principles. However, a precatory designation of an attorney does not nullify the balance of a will. Succession of Walters, 261 La. 59, 259 So.2d 12 (1972).
For the foregoing reasons, the judgment of the trial court is reversed. Rivet v. Battistella, 167 La. 766, 120 So. 289 (1929) and other cases holding that the designation of an attorney in a will is binding are overruled. The matter is remanded for further proceedings according to law.[18]
REVERSED AND REMANDED.
CALOGERO, J., dissents.
DENNIS, J., concurs and assigns reasons.
DENNIS, Judge, concurring.
I concur in the decision of the Court but write separately to give what I believe are important additional reasons which require the same conclusion.
*611 Pursuant to its exclusive authority to regulate the practice of law, this court has adopted rules which are pertinent to the issues of the instant case: A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may acquire a lien granted by law to secure his fee or expenses and contract with a client for a reasonable contigent fee in a civil case. DR 5-103(A)(1), and (2). A lawyer may not contract for, charge or collect a clearly excessive fee. DR 2-106(A). A lawyer shall not recommend employment of himself to a non lawyer who has not sought his advice regarding employment of a lawyer. DR 2-103(A).
Sound reasons of policy and justice support the foregoing Disciplinary Rules. The relation of attorney and client is one of special confidence and trust and the dignity and integrity of the legal profession demand that the interests of the client be fully protected. Moreover, without public confidence in the members of the legal profession which is dependent upon absolute fairness in the dealings between attorney and client, courts cannot function in the proper administration of justice. Inherent in the relationship between attorney and client is the fact that the client must rely almost entirely upon the good faith of the attorney who alone can make an informal estimate of the value of the client's legal right and of the expense and effort necessary to enforce it. These considerations have given rise to the generally accepted rule that a client may discharge his attorney at any time with or without cause. In order for the right to discharge to be of any value the client must not be forced to risk paying the full contract price for services not rendered upon a determination by a court that the discharge was without legal cause. Otherwise, the client would frequently be forced to choose between continuing the employment of an attorney in whom he has lost faith, or risking the payment of double fees. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 111, 114, 116, n. 6 (La.1979) (Calogero, J., on rehearing) (Dennis, J. dissenting from original opinion). See, Fracasse v. Brent, 6 Cal.3d 784, 494 P.2d 9 (1972). See also, Ambrose v. Detroit Edison, 65 Mich.App. 484, 237 N.W.2d 520 (1976); People v. Radinsky, 512 P.2d 627 (Colo.1973); Cole v. Myers, 128 Conn. 223, 21 A.2d 396 (1941); First Nat'l Bank v. Bassett, 83 Okl. 592, 83 P.2d 837 (1938); Ramey v. Graves, 112 Wash. 88, 191 P. 801 (1920); Martin v. Camp, 219 N.Y. 170, 114 N.E. 46 (1916).
To allow a testator to make a binding designation of an attorney to serve others after his death or to permit the attorney to profit by the judicial enforcement of such an arrangement against those whom he is supposed to serve would be to condone violations of the rules of this Court setting forth the ethical duties owed by a lawyer to his clients and his profession. Moreover, enforcement of such arrangements would tend to embarrass, frustrate and impede this court in its function of regulating the practice of law. In order to uphold the rules it has adopted pursuant to its original jurisdiction and inherent judicial power, this court must now prohibit the enforcement of a testamentary designation which contravenes the Code of Professional Responsibility which it has promulgated for the regulation of the practice of law.
NOTES
[1] The trial court had continued the action for nullity.
[2] Succession of Feitel, 187 La. 596, 175 So. 72 (1937); Succession of Rembert, 199 La. 743, 7 So.2d 40 (1942); Succession of Bush, 223 La. 1008, 67 So.2d 573 (1953); Succession of Pope, 230 La. 1049, 89 So.2d 894 (1956); and Succession of Falgout, 279 So.2d 679 (La., 1973). However, a designated attorney in a will is not entitled to an unearned fee. Succession of Boyenga, 437 So.2d 260 (La., 1983).
[3] LSA-C.C. art. 1519 provides:

"In all dispositions inter vivos and mortis causa impossible conditions, those which are contrary to the laws or to morals, are reputed not written."
[4] LSA-C.C. art. 1527 provides:

"The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals."
[5] See, for example, Irving Trust v. Day, 314 U.S. 556, 562, 62 S.Ct. 398, 401, 86 L.Ed. 452, 457 (1941); U.S. v. Perkins, 163 U.S. 625, 627, 16 S.Ct. 1073, 1074, 41 L.Ed. 287 (1895); In re Ogier's Estate, 101 Cal. 381, 35 P. 900 (Cal., 1894); In re Arneberg's Estate, 184 Wis. 570, 200 N.W. 557 (Wis., 1924); In re Lachmund's Estate, 179 Or. 420, 170 P.2d 748 (1946); In re Estate of Deardoff, 10 Oh.St.3d 108, 461 N.E.2d 1292 (Ohio, 1984); In re Estate of Smith, 131 Ariz. 190, 639 P.2d 380 (Ariz.App., 1981); In re Estate of Fresia, 390 So.2d 176 (Fla.App., 1980); Chancey v. West, 266 Ala. 314, 96 So.2d 457 (Ala., 1957); In re Estate of Marks, 83 So.2d 853 (Fla., 1955); 36 Marquette Law Review 211 (1952); 31 Marquette Law Review 231 (1947); 41 Harvard Law Review 709 (1928).
[6] 51 Tulane Law Review at 353.
[7] See 10 La. Civil Law Treatise (Oppenheim), § 124, p. 245 [footnotes omitted].
[8] LSA-C.C. art. 1489 provides:

"Doctors of physic or surgeons, who have professionally attended a person during the sickness of which he dies, can not receive any benefit from donations inter vivos or mortis causa made in their favor by the sick person during that sickness. To this, however, there are the following exceptions:
"1. Remunerative dispositions made on a particular account, regard being had to the means of the disposer and to the services rendered.
"2. Universal disposition in case of consanguinity.
"The same rules are observed with regard to ministers of religious worship."
[9] LSA-C.C. art. 1658.
[10] "Unlike prohibited substitutions, only the second disposition in a fidei commissum is null. The direction or charge on the first donee `is to be regarded only as a precatory suggestion addressed to the conscience of the donee or legatee, which being illegal, but harmless, can have no binding effect, and may be regarded as not written.' This leaves the bequest valid as to the first donee as legatee." 10 La.Civil Law Treatise, (Oppenheim) § 122, at p. 229 [footnotes omitted].
[11] "The testamentary executor is not required to act personally. He may fulfill the duties he is required to perform through an attorney in fact. This he may do as part of his functions, although the testator has appointed a second testamentary executor in the absence of the first." Lazarus, Testamentary Successions and Gratuitous Dispositions § 711 in 3 Louisiana Civil Law Translations 436 (1969) [footnote omitted].
[12] "Except with regard to the rights of forced heirs, the mandate conferred to the testamentary executor is obligatory on the heirs or universal legatees of the testator. They can neither revoke it at their pleasure, not restrict the powers appertaining thereto. They may, however, bring about the removal of the testamentary executor if his administration evidences his incapacity, carelessness or unfaithfulness, or if he has become insolvent or bankrupt. Moreover, the appointment of a testamentary executor does not affect the heirs or universal legatees in the exercise of any rights when not incompatible with the accomplishment of his mandate." Lazarus, Testamentary Successions and Gratuitous Dispositions § 711 in 3 Louisiana Civil Law Translations 436 (1969) [footnotes omitted].
[13] "... [W]hen the executor is a professional man, chosen as such and not as a friend (such as an attorney or a notary), he may claim compensation for his services. Amiens, 26 Jan., 1899, Rev.Not. 1899, Art. 10258. On the other hand, in practice, the testator simply makes a particular legacy known as Diamant in favor of the executor, in compensation for his troubles. This is a remunerative donation. Aix, 17 Dec., 1945, J. C. P. 46, II, 3035, note by J. Becque'. If there are forced heirs, not only the diamant, but also the expenses of the executor, must be imputed to the disposable portion." Lazarus, Testamentary Successions and Gratuitous Dispositions § 711, footnote 12-2 in 3 Louisiana Civil Law Translations 436 (1969).
[14] Attorney Pauratore was also appointed as the alternate executor, in the event of the wife's prior death or incapacity. He filed a rule to remove Mrs. Jenkins as executrix.
[15] See Estate of Ainsworth, 52 Wis.2d 152, 187 N.W.2d 828 (1971) and In re Estate of Deardoff, supra.
[16] LSA-C.C. art. 940 provides:

"A succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased person to whom he succeeds.
"This rule applies also to testamentary heirs, to instituted heirs and universal legatees, but not to particular legatees."
[17] LSA-C.C. art. 1520 provides:

"Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
"Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee."
[18] Attorney Pauratore is, of course, entitled to recover any sums advanced on behalf of the succession and any fees to which he is entitled for work benefiting the heirs. To that extent, he should not be penalized for his reliance on past jurisprudence; he cannot recover for any work which was solely adversary to the heirs.